(No. 97603.—

THE PEOPLE OF THE STATE OF ILLINOIS, Appellee, v. JOYCE BUSH, Appellant.

*Opinion filed March 24, 2005.*

320

Michael J. Pelletier, Deputy Defender, and Miriam Hallbauer and Tiffany Green, Assistant Appellate Defenders, of the Office of the State Appellate Defender, of Chicago, for appellant.

Lisa Madigan, Attorney General, of Springfield, and Richard A. Devine, State's Attorney, of Chicago (Linda D. Woloshin, Assistant Attorney General, of Chicago, and Renee G. Goldfarb, Annette Collins, Ashley Romito and Matthew Connors, Assistant State's Attorneys, of counsel), for the People.

JUSTICE THOMAS delivered the opinion of the court:

Defendant, Joyce Bush, was charged with two counts of possession of a controlled substance with the intent to deliver (720 ILCS 570/401(d), 407(b)(2) (West 2000)). Following a bench trial, the circuit court of Cook County convicted defendant of both counts and sentenced her to 6½ years in prison. Defendant raised several arguments on appeal, and the appellate court affirmed. No. 1—02—1187 (unpublished under Supreme Court Rule 23). We allowed defendant's petition for leave to appeal. 177 Ill. 2d R. 315(a). Before this court, defendant argues that (1) the State failed to prove her intent to deliver, and (2) the

State failed to prove that the substance in question was cocaine. For the reasons that follow, we affirm.

## BACKGROUND

Officer Todd Olsen of the Chicago police department testified to the following facts. On September 26, 2000, at approximately 1:50 a.m., Officer Olsen was conducting narcotics surveillance on South Ridgeway with his partner, Officer Richard Pruger. On two occasions over the course of approximately five minutes, Officer Olsen observed an unknown male approach defendant, who was standing behind a wrought iron fence that fronted an apartment building. On each occasion, defendant and the man would engage in a brief conversation. Defendant would then accept an unknown amount of money from the man, walk a few feet away, reach under the fence, retrieve a small unknown item from a brown paper bag, and deliver the unknown item to the man who had just given her money. After watching the second of these transactions, Officer Olsen was convinced that he was witnessing the sale of narcotics. He and his partner returned to their squad car and pulled up in front of defendant, who was still in position behind the wrought iron fence. While Officer Pruger detained defendant, Officer Olsen retrieved the brown paper bag from underneath the fence. Inside the brown paper bag, Officer Olsen found a Ziploc bag containing a white chunk of what appeared to be crack cocaine. Defendant was placed under arrest, and a custodial search revealed two $10 bills in her pants pocket. Officer Olsen inventoried the white substance under number 2419062 and sent it to the Illinois State Police Crime Lab for testing.

Following Officer Olsen's testimony, the State tendered a stipulation entered into with defendant concerning the white substance recovered from the brown paper bag. That stipulation provided as follows:

"[I]f called to testify, Joel Gray would testify that he's a

forensic scientist employed by the Illinois State Police Crime Lab. That he is an expert in the field of forensic chemistry. That he would testify that he tested the item recovered in this case inventoried under number 2419062 and used tests and procedures commonly—commonly accepted in the field of forensic chemistry for the testing of narcotics.

Based on his expertise, he would testify that that item was in fact cocaine in the amount of less than .1 gram. Also be a stipulation that that remained intact from the time it was inventoried to the time of testing at the crime lab."

The trial court accepted the stipulation without objection, and the State rested.

Defendant moved for a directed verdict, and the trial court denied the motion. After hearing closing arguments, the trial court found defendant guilty on both counts. Defendant filed posttrial motions raising several issues, none of which attacked the adequacy of the foundation for Gray's opinion. The trial court denied defendant's motions and sentenced her to 6½ years in prison. The appellate court affirmed (No. 1—02—1187 (unpublished under Supreme Court Rule 23)), and we allowed defendant's petition for leave to appeal (177 Ill. 2d R. 315(a)).

## ANALYSIS

Defendant raises two arguments before this court. First, defendant argues that the State failed to prove beyond a reasonable doubt that she intended to deliver the substance recovered from the brown paper bag. Second, defendant argues that the State failed to prove beyond a reasonable doubt that the substance recovered from the brown paper bag was in fact cocaine, as Gray's opinion on that point lacked an adequate foundation. We address each of these arguments in turn.

### Intent to Deliver

Defendant first argues that the State failed to prove

her intent to deliver the substance recovered from the brown paper bag. In support, defendant argues that the evidence at trial established only two things: (1) that defendant sold two unidentified items out of the brown paper bag; and (2) that the brown paper bag, when recovered, contained a small amount of a substance later identified as cocaine. Defendant then argues that, because Officers Olsen and Pruger did not arrest the two unidentified purchasers, there is no way of knowing what defendant actually sold them. It is entirely possible, defendant contends, that the two items sold from the bag were innocuous, while the cocaine that remained in the bag was for defendant's personal use. According to defendant, "the *** failure to detain any alleged buyer left the trial court only to guess or speculate whether Ms. Bush had delivered a controlled substance."

In support of this argument, defendant relies primarily upon three cases. The first is *People v. Cooper*, 337 Ill. App. 3d 106 (2003), which the appellate court below expressly rejected. In *Cooper*, as in the present case, a police officer observed the defendant standing alone at night near a vacant lot. On four occasions, the officer watched an unknown individual approach the defendant, engage the defendant in a brief conversation, and hand the defendant an unknown amount of money. The defendant would then walk a short distance to a fence post, retrieve a small item from a clear plastic bag, and hand the item to the individual, who then walked away. After the fourth such transaction, the officer moved in, arrested the defendant, and recovered the clear plastic bag, which contained nine foil packets containing a substance later identified as heroin. *Cooper*, 337 Ill. App. 3d at 108-09.

On appeal, the appellate court held that this evidence was insufficient to sustain a conviction for possession of heroin with the intent to deliver. *Cooper*, 337 Ill. App. 3d

at 114. In so doing, the court first noted that "[i]n this matter, the amount of drugs recovered was a small amount that reasonably could be viewed to be intended for personal consumption." *Cooper*, 337 Ill. App. 3d at 113. The court then stated:

> "[T]he State wants this court to assume that the four items that Cooper handed out to the four unknown individuals were heroin. Yet, it is possible that the items which Cooper handed out were innocuous. Because neither of the individuals was stopped, we do not know what Cooper handed to them. If only one of the unknown individuals had been stopped, we would not have to guess, speculate or conjecture on whether the defendant had in fact delivered the subject heroin." *Cooper*, 337 Ill. App. 3d at 114.

Taking these two points together, the court "refuse[d] to assume that the untested items, including those allegedly sold to four unknown buyers, were heroin." *Cooper*, 337 Ill. App. 3d at 114. Accordingly, the court held that the State failed to prove intent to deliver beyond a reasonable doubt. *Cooper*, 337 Ill. App. 3d at 114.

The second case relied upon by defendant is *People v. Robinson*, 167 Ill. 2d 397 (1995), in which this court discussed the challenge of proving a defendant's intent to deliver a controlled substance. In *Robinson*, the court began by explaining that, "[b]ecause direct evidence of intent to deliver is rare, such intent must usually be proven by circumstantial evidence." *Robinson*, 167 Ill. 2d at 408. Consequently, whether the State proved intent to deliver in a given case "involves the examination of the nature and quantity of circumstantial evidence necessary to support an inference of intent to deliver." *Robinson*, 167 Ill. 2d at 408. The court then noted that, "[i]n controlled substance prosecutions, many different factors have been considered by Illinois courts as probative of intent to deliver." *Robinson*, 167 Ill. 2d at 408. These factors include whether the quantity of controlled substance in defendant's possession is too large to be viewed as being for personal consumption; the high purity of the drug

confiscated; the possession of weapons; the possession of large amounts of cash; the possession of police scanners, beepers or cellular telephones; the possession of drug paraphernalia; and the manner in which the substance is packaged. *Robinson*, 167 Ill. 2d at 408. As a final note, the court added that "[i]n light of the numerous types of controlled substances and the infinite number of potential factual scenarios in these cases, there is no hard and fast rule to be applied in every case." *Robinson*, 167 Ill. 2d at 414.

Finally, defendant cites this court's decision in *People v. Jones*, 174 Ill. 2d 427 (1996). In *Jones*, the defendant was arrested for the possession of five separate packets containing a white rocky substance that the police believed to be a controlled substance. The State selected two of the five packets and tested their contents. The contents of the remaining three packets were not tested. The two tested packets showed the presence of cocaine and weighed a combined total of 0.59 grams. The total weight of all five packets was 1.4 grams. The defendant was tried and convicted of possessing 1.4 grams of cocaine with the intent to deliver. *Jones*, 174 Ill. 2d at 428.

In affirming the appellate court's reversal of defendant's conviction, this court held that the defendant could be convicted of possessing only 0.59 grams of cocaine with the intent to deliver, as only 0.59 grams of the recovered substance had been tested and shown to contain cocaine. *Jones*, 174 Ill. 2d at 429. As for the substances found in the three untested packets, the court held that no inference whatsoever could be drawn as to their composition. *Jones*, 174 Ill. 2d at 430. That said, the court conceded that "it is not difficult to speculate, as did the trial judge, that the remaining three packets may have contained cocaine." *Jones*, 174 Ill. 2d at 430. Nevertheless, "such a finding must be based on evidence and not upon guess, speculation, or conjecture." *Jones*, 174 Ill. 2d at 430.

Defendant maintains that *Cooper*, *Robinson*, and *Jones* compel a reversal of her convictions. Defendant first argues that, as in *Cooper*, none of the factors outlined in *Robinson* are present in this case. The quantity of drugs recovered from defendant is consistent with personal use, and defendant was not found in the possession of any weapons, large amounts of cash, police scanners, beepers, cellular telephones, or other drug paraphernalia. Defendant then argues that, because none of the *Robinson* factors are present, "the only basis upon which the court could have determined intent to deliver consisted of the assumption that the unidentified items the officer saw Ms. Bush hand to the two unknown persons contained a controlled substance." In other words, defendant's conviction, like Cooper's conviction, is premised upon the assumption that the items sold out of the bag were identical to the items eventually recovered from the bag. As the *Cooper* court explained, however, *Jones* forbids this very assumption. With neither this assumption nor the *Robinson* factors as its basis, defendant's conviction for possession with intent to deliver must be reversed.

We reject both defendant's argument and *Cooper*. In assessing the sufficiency of the evidence to sustain a verdict on appeal, a reviewing court's inquiry is "whether, after viewing the evidence in the light most favorable to the prosecution, *any* rational trier of fact could have found the essential elements of the crime beyond a reasonable doubt." (Emphasis in original.) *Jackson v. Virginia*, 443 U.S. 307, 318-19, 61 L. Ed. 2d 560, 573, 99 S. Ct. 2781, 2788-89 (1979); *People v. Collins*, 106 Ill. 2d 237, 261 (1985). Under this standard, a reviewing court must allow all reasonable inferences from the record in favor of the prosecution. *People v. Cunningham*, 212 Ill. 2d 274, 280 (2004). This standard applies in *all* criminal cases, regardless of the nature of the evidence. *Cunningham*, 212 Ill. 2d at 279.

There is no question that, after viewing the evidence in this case in the light most favorable to the prosecution, a rational trier of fact could have found beyond a reasonable doubt that defendant intended to deliver the substance found in the brown paper bag. Officer Olsen observed defendant standing alone behind a wrought iron fence at 2 a.m. On two separate occasions, an unknown man approached defendant, spoke briefly to her, and handed her money. Defendant then retrieved an unknown item from a brown paper bag that she kept a short distance from herself, handed the item to the man who had just given her money, and returned to her post behind the fence while the unknown man walked away. After detaining defendant, the police looked inside the brown paper bag and found a substance later identified as cocaine. When construed a light most favorable to the prosecution, these facts easily support an inference that defendant intended to deliver the remaining contents of the brown paper bag.

Neither *Robinson* nor *Jones* alters our conclusion. As for *Robinson*, defendant reads that decision much too narrowly. Defendant mistakenly believes that the list of factors identified in *Robinson* is both exhaustive and inflexible, and that the absence of such factors precludes a finding of intent to deliver as a matter of law. This is not the case. *Robinson* makes very clear that the factors enumerated in that opinion are *examples* of the many factors that "have been considered by Illinois courts as probative of intent to deliver." *Robinson*, 167 Ill. 2d at 408. *Robinson* also expressly allows for the consideration of other, unspecified factors by stating that, "[i]n light of the numerous types of controlled substances and the infinite number of potential factual scenarios in these cases, there is no hard and fast rule to be applied in every case." *Robinson*, 167 Ill. 2d at 414.

The present case perfectly illustrates the wisdom of

*Robinson*'s flexibility. To be sure, defendant is absolutely correct in arguing that none of the factors enumerated in *Robinson* are present in this case. Nevertheless, there are *other* factors present that, while not articulated in *Robinson*, are equally probative of intent to deliver. For example, defendant was standing alone behind a fence at 2 a.m. selling small items from a brown paper bag; defendant resumed her post behind the fence at the conclusion of both transactions; and when recovered by the police, the brown paper bag contained a substance later identified as cocaine. While defendant may not be the armed, cash-wielding, high-volume drug dealer contemplated in *Robinson*, the factors outlined above, taken together, are no less indicative of an intent to deliver a controlled substance.

*Jones*, in turn, has no application to the present case. Again, defendant argues that, because none of the *Robinson* factors are present, "the only basis upon which the court could have determined intent to deliver consisted of the assumption that the unidentified items the officer saw Ms. Bush hand to the two unknown persons contained a controlled substance." We now know, of course, that the absence of "*Robinson* factors" is of no consequence, as the factors present in this case are equally indicative of an intent to deliver. But even if that were not the case, defendant's invocation of *Jones* remains specious. *Jones* stands for the proposition that, under certain circumstances, the nature of an untested substance cannot be inferred from the nature of a tested substance. In this case, the nature of an untested substance is not at issue. We *know* that the substance found in the brown paper bag tested positive for cocaine, and whether the first two transactions likewise involved cocaine is not dispositive of defendant's intent to deliver the substance found in the bag. To illustrate, assume that we knew with scientific certainty that the first two

transactions *did* involve cocaine. We still could not infer, from this fact alone, that defendant intended to sell the cocaine found in the bag. As defendant suggests, the remaining cocaine could have been for defendant's personal use. Conversely, knowing that the first two transactions involved Bazooka bubble gum would not, by itself, preclude the inference that defendant intended to also sell the cocaine. It could be that defendant was selling whatever she could to raise quick cash, be it bubble gum or cocaine.

That said, proof of defendant's intent to deliver the remaining cocaine is hardly lacking. Officer Olsen testified that, after twice selling small items out of the brown paper bag, defendant once again assumed her post behind the wrought iron fence. This fact alone supports the inference that defendant intended to engage in further transactions. And given that the brown paper bag contained only cocaine, there is only one thing that defendant could have intended to sell. Significantly, this inference has everything to do with defendant's behavior, and nothing at all to do with the nature of the two items defendant actually sold. *Jones* is therefore irrelevant.

In sum, this case presents nothing more than a routine sufficiency of the evidence question governed by the familiar standard set forth in *Jackson* and *Collins*. The trial court was permitted to draw all reasonable inferences from the evidence in this case, including that defendant intended to sell the remaining contents of the brown paper bag. Nothing in either *Jones* or *Robinson* precludes such an inference, and we consequently have no basis for reversing defendant's conviction on this point.

## Stipulated Testimony

Defendant next argues that the State failed to prove her guilty beyond a reasonable doubt because it failed to lay an adequate foundation for Gray's opinion that the

recovered substance was cocaine. More specifically, defendant argues that the State failed to present any proof that (1) the testing equipment used was properly functioning, (2) the testing data was accurately recorded and interpreted, or (3) Gray reached his opinion with a reasonable degree of scientific certainty. Absent such proof, defendant argues, there is no basis for concluding that Gray's opinion is in any way reliable. Although defendant concedes that she did not raise this argument in the trial court, she insists that it is not subject to waiver because it attacks the sufficiency of the evidence rather than the admissibility of Gray's opinion. In support, defendant cites *People v. Raney*, 324 Ill. App. 3d 703 (2001), and *People v. Hagberg*, 192 Ill. 2d 29 (2000).

In *Raney*, the defendant was charged with possession of a controlled substance with the intent to deliver. At trial, the State called Webelene Bethea, a forensic scientist at the Illinois State Crime Laboratory. The defendant objected to Bethea's qualification as an expert both because she was not a member of any forensic chemistry organization and because she lacked a degree in chemistry. Over the defendant's objection, the trial court allowed Bethea to testify. Bethea testified that she tested the substance in question with both a cobalt thiocyanate color test and a gas chromatography mass spectrometer (GCMS) machine. Based on such testing, she concluded that the substance in question contained cocaine. When the State rested, defendant moved for a directed finding based on the State's failure to prove an adequate foundation for Bethea's opinion. The motion was denied, and defendant rested. During closing arguments, the defendant again argued that the State failed to lay an adequate foundation for Bethea's opinion. The trial court found the defendant guilty, and the defendant appealed. *Raney*, 324 Ill. App. 3d at 704-05.

The appellate court reversed, holding that the State

had failed to lay a proper foundation for Bethea's opinion. In so doing, the court explained that, in *People v. Bynum*, 257 Ill. App. 3d 502 (1994), the court found that the State failed to lay an adequate foundation for the admission of GCMS test results because the State's expert failed to (1) testify that the GCMS machine was generally relied upon by experts in the field; (2) explain how the machine was calibrated; or (3) explain how she knew the results were accurate. Applying *Bynum* to the facts before it, the *Raney* court initially held that Bethea satisfied the foundational requirement regarding proof that the GCMS machine was generally relied upon by experts in the field. Nevertheless:

"Expert Bethea failed to testify that before conducting the GCMS test of the suspected controlled substance the GCMS machine was working properly. She failed to indicate whether, for example, any testing was done to assess the operating condition of the GCMS machine. She also failed to indicate whether standards were run to test the accuracy of the GCMS machine. As a result, this record contains no evidence regarding whether the GCMS machine was functioning properly at the time it was used to analyze the substance in this case." *Raney*, 324 Ill. App. 3d at 709.

In other words, Bethea "failed to explain how the machine was calibrated or why she knew the results were accurate." *Raney*, 324 Ill. App. 3d at 710. The appellate court concluded that, because "the State failed to establish the necessary foundation proof for admitting the expert opinion," the State failed to prove defendant guilty beyond a reasonable doubt. *Raney*, 324 Ill. App. 3d at 710-11.

In *Hagberg*, the defendant was convicted of possessing a controlled substance. At trial, the only evidence concerning the nature of the substance was the testimony of the arresting officer, who performed a field test on the substance following defendant's arrest. Although the field test purportedly revealed the presence of cocaine, the arresting officer could not recall the name of the test,

the instructions for performing the test, the color that indicated that the tested substance contained cocaine, or the color that the test actually turned. Instead, the officer merely asserted that the substance somehow turned the right color, whatever that color might be. This court reversed defendant's conviction, stating that, "[s]tanding alone, such vague and speculative testimony is by no means sufficient to support defendant's conviction." *Hagberg*, 192 Ill. 2d at 34.

According to defendant, *Raney* and *Hagberg* establish that, "where the charge against a defendant requires proof of the chemical identity of controlled substance, evidence that an expert reached her opinion about the identity of the substance in a reliable manner does not constitute a mere formality that is waived if the omission is not objected to at trial." Rather, "such evidence provides the only basis upon which a fact-finder may determine the reliability of the opinion, and therefore the sufficiency of the State's proof." In other words, as defendant sees it, an argument that an expert's opinion lacked an adequate foundation cannot be waived because, under both *Raney* and *Hagberg*, such an argument ultimately goes to the sufficiency of the evidence.

We disagree. To preserve an issue for review, a defendant must raise an objection both at trial and in a written posttrial motion. *People v. Enoch*, 122 Ill. 2d 176 (1988). Here, defendant did neither. Moreover, when a defendant procures, invites, or acquiesces in the admission of evidence, even though the evidence is improper, she cannot contest the admission on appeal. *People v. Caffey*, 205 Ill. 2d 52, 114 (2001); *People v. Payne*, 98 Ill. 2d 45, 50 (1983). This is because, by acquiescing in rather than objecting to the admission of allegedly improper evidence, a defendant deprives the State of the opportunity to cure the alleged defect. See *People v. Trefonas*, 9 Ill. 2d 92, 98 (1956) ("A party cannot sit by and

permit evidence to be introduced without objection and upon appeal urge an objection which might have been obviated if made at the trial"). Here, defendant certainly invited and acquiesced in the admission of Gray's opinion that the substance in question tested positive for cocaine. Indeed, defendant stipulated to both Gray's qualifications and the admission of his conclusion. Had defendant instead raised a timely objection to the admission of Gray's opinion, the State would have had the opportunity to cure the alleged defect either by modifying the stipulation to include additional foundational support or by calling Gray to testify in person. However, because defendant waited until appeal to raise her objection, the State was given no such opportunity. Accordingly, defendant cannot now be heard on this issue.

In this context, the impact of defendant's stipulation cannot be overstated. No one disputes that the admission of an expert's testimony requires an adequate foundation establishing that the information upon which the expert bases his opinion is reliable. See, *e.g., Martin v. Sally*, 341 Ill. App. 3d 308, 315 (2003). Nevertheless, "[t]he law is well established that an accused may, by stipulation, waive the necessity of proof of all or part of the case which the People have alleged against him." *People v. Polk*, 19 Ill. 2d 310, 315 (1960). Here, defendant stipulated that Gray's opinion was admissible. In so doing, defendant waived the necessity of proving the requisite foundation for that opinion. Foundation, after all, is "evidence or testimony that establishes the admissibility of other evidence." Black's Law Dictionary 682 (8th ed. 2004). If a party stipulates that such "other evidence" is admissible, the need to lay a foundation no longer exists. Thus, to the extent that Gray's opinion lacks an adequate foundation, it is defendant's stipulation, not the State's neglect, that is responsible.

On this point, it is worth noting that this court has

previously held that, by failing to object at trial, a defendant waives any argument that an expert's opinion lacked an adequate foundation. In *People v. Jones*, 16 Ill. 2d 569, 575 (1959), for example, a police officer testified that, when arrested, the defendant was in possession of a white powder that field-tested positive for opium. After delivering the powder to the crime laboratory, the officer received a report of the chemist's analysis. This report was offered into evidence, and the defendant stipulated that the report was an analysis of whatever the officer turned over to the crime laboratory and that the tested substance was in fact heroin. On appeal, the defendant argued for the first time that "the competent evidence failed to prove that he was in the possession of narcotic drugs at the time of his arrest." *Jones*, 16 Ill. 2d at 575. More specifically, defendant argued that the white powder was not properly proved to be a narcotic drug, in part because "there is a failure to prove the qualifications of the chemist." *Jones*, 16 Ill. 2d at 575. In rejecting this argument outright, the court explained that "[d]efendant cannot now be heard to complain when his counsel, of his own choosing, *made no objection to the lack of qualification proof*, and stipulated to the correctness of the report." (Emphasis added.) *Jones*, 16 Ill. 2d at 575.

Similarly, in *People v. Richardson*, 123 Ill. 2d 322 (1988), the defendant was charged with a murder that occurred on April 1, 1980. As proof of defendant's involvement in the April 1, 1980, murder, the State presented evidence concerning defendant's participation in another shooting that took place on April 5, 1980. This evidence included an expert's opinion that the same gun was used in both the April 5, 1980, shooting and the April 1, 1980, murder. In this court, the dissenting justice argued that evidence concerning the April 5, 1980, shooting should have been excluded because the expert's

testimony on that point lacked an adequate foundation. *Richardson*, 123 Ill. 2d at 364-68 (Clark, J., dissenting). In rejecting the dissent's argument, the majority held that, because "at trial defendant failed to object to the supposed lack of foundation *** he has waived this objection." *Richardson*, 123 Ill. 2d at 340.

*People v. Jones*, 60 Ill. 2d 300 (1975), reached the same result. In that case, the defendants argued for the first time on appeal that the trial court erred in admitting the opinion of the State's fingerprint expert, Manuel Farmer. According to the defendants, "the State did not lay a proper foundation for admittance of the fingerprint into evidence." *Jones*, 60 Ill. 2d at 306. In rejecting this argument, the court explained that, because defense counsel objected to Farmer's testimony only on the specific ground that his name did not appear on the State's witness list, "[the] argument of no proper foundation stands waived." *Jones*, 60 Ill. 2d at 306-07.

Thus, *Jones*, *Richardson*, and *Jones* clearly establish that, by failing to object at trial, a defendant waives any argument that an expert's opinion lacked an adequate foundation. And in at least one of these cases, the defendant specifically argued that the alleged lack of foundation rendered the State's evidence insufficient to convict. See *Jones*, 16 Ill. 2d at 575. We see no meaningful distinction between the present case and these three cases.

*Jones, Richardson*, and *Jones* also reveal why defendant's reliance upon *Raney* is wholly misplaced. In *Raney*, the defendant repeatedly argued before the trial court that the expert's opinion lacked an adequate foundation. The defendant in that case objected to the admission of that opinion based upon the expert's lack of qualifications, moved for a directed verdict based upon the lack of foundation for the expert's opinion, and based his closing argument on the lack of foundation for the expert's

opinion. This is in stark contrast to *Jones, Richardson*, and *Jones*, where the defendants allowed the expert's opinion to be admitted without any objection. More importantly, *Raney* is in stark contrast to the present case, where defendant not only allowed Gray's opinion to be admitted without objection but also invited its admission by agreeing to the stipulation.

As importantly, *Raney* itself acknowledges that, by failing to object at trial, a defendant waives any argument an expert's opinion lacked an adequate foundation. Again, *Raney* relied principally upon *People v. Bynum*, 257 Ill. App. 3d 502 (1994). In *Bynum*, the defendant's conviction for possession of a controlled substance was based in part on expert testimony that the substance in question tested positive for cocaine. On appeal, the *Bynum* court explained that, for a variety of reasons, the State failed to lay an adequate foundation for the admission of that testimony. *Bynum*, 257 Ill. App. 3d at 513-14. Rather than reverse the defendant's conviction, however, the *Bynum* court held that the defendant waived the argument by failing to raise it at trial. *Bynum*, 257 Ill. App. 3d at 515. This point was not lost on the *Raney* court, which, after summarizing *Bynum*'s analysis, explained that "because the defendant failed to object at trial, the *Bynum* court found that the issue regarding lack of proper foundation was waived." *Raney*, 324 Ill. App. 3d at 707. Thus, defendant's principle authority for arguing that the lack of foundation for an expert's opinion is not waived by failing to object at trial actually states precisely the opposite.

As for *Hagberg*, defendant reads far too much into that opinion. As characterized in defendant's brief, *Hagberg* stands for the proposition that "[a]n expert's bald opinion, without evidence of its reliability, cannot constitute proof of guilt beyond a reasonable doubt." In fact, *Hagberg* stands for no such thing. In *Hagberg*, the

opinion in question was not rendered by an expert. Rather, it was rendered by someone who the defense, through its cross-examination, very ably demonstrated had *no expertise whatsoever* in the relevant field. Thus, properly characterized, *Hagberg* stands for the proposition that the opinion *of someone who has no idea what he is talking about* cannot constitute proof of guilt beyond a reasonable doubt. This principle, of course, has no application to the present case, where the opinion in question was admitted by stipulation and rendered by someone defendant concedes is an expert in the field of forensic chemistry.

In reaching this result, we also reject defendant's argument that the waiver rule should be suspended in this case because the admission of Gray's opinion in the absence of an adequate foundation amounted to plain error. As discussed above, by stipulating to the admissibility of Gray's opinion, defendant waived the necessity of proving the requisite foundation for that opinion. The trial court's admission of that opinion was therefore not only not plain error, it was not error at all.

## CONCLUSION

The evidence in this case was more than sufficient to support an inference that defendant intended to deliver the substance recovered from the brown paper bag. Defendant's argument that Gray's opinion lacked an adequate foundation is waived. For these reasons, we affirm the judgment of the appellate court, affirming defendant's convictions for possession of a controlled substance with the intent to deliver.

*Affirmed.*