# Illinois Official Reports

## Appellate Court

**People v. Taiwo**, 2015 IL App (3d) 140105

| | |
|---|---|
| Appellate Court Caption | THE PEOPLE OF THE STATE OF ILLINOIS, Plaintiff-Appellee, v. HERIKA TAIWO, Defendant-Appellant. |
| District & No. | Third District<br>Docket No. 3-14-0105 |
| Filed | April 3, 2015 |
| Decision Under Review | Appeal from the Circuit Court of Will County, Nos. 13-DT-346, 13-TR-18010 through 13-TR-18013; the Hon. Domenica Osterberger, Judge, presiding. |
| Judgment | Affirmed. |
| Counsel on Appeal | Christopher S. Carroll, of Aurora, for appellant.<br><br>James Glasgow, State's Attorney, of Joliet (Gary F. Gnidovec, of State's Attorneys Appellate Prosecutor's Office, of counsel), for the People. |

JUSTICE WRIGHT delivered the judgment of the court, with opinion. Justices Lytton and Schmidt concurred in the judgment and opinion.


**OPINION**

¶ 1    After a bench trial, defendant, Herika Taiwo, was convicted of driving under the influence of alcohol (DUI) (625 ILCS 5/11-501(a)(2) (West 2012)), improper lane usage (625 ILCS 5/11-709(a) (West 2012)), and failure to notify authorities of an accident (625 ILCS 5/11-406(a) (West 2012)). Defendant appeals the DUI conviction alone by challenging two rulings in the trial court. First, defendant claims the trial court improperly denied her motion to quash her arrest and suppress evidence (motion to suppress). Alternatively, defendant contends the State failed to prove beyond a reasonable doubt that she was in actual physical control of any vehicle on the night of her arrest for DUI. We affirm.

¶ 2                                      FACTS

¶ 3    On February 17, 2013, defendant was charged with DUI, pursuant to section 11-501(a)(2) of the Illinois Vehicle Code (Vehicle Code) (625 ILCS 5/11-501(a)(2) (West 2012)), improper lane usage (625 ILCS 5/11-709(a) (West 2012)), failure to notify authorities of an accident (625 ILCS 5/11-406(a) (West 2012)), failure to reduce speed (625 ILCS 5/11-601(a) (West 2012)), and operating an uninsured motor vehicle (625 ILCS 5/3-707(a) (West 2012)). On April 3, 2013, defendant filed a motion to suppress arguing officers did not have reasonable, articulable suspicion to conduct a traffic stop of a vehicle driven by another person, but occupied by defendant as a front-seat passenger.

¶ 4    A hearing on defendant's pretrial motion to suppress began on November 7, 2013. Defendant called Officer James Block, of the Bolingbrook police department, who testified he received a call from the dispatcher on February 17, 2013, at approximately 3 a.m. According to the dispatcher, citizens reported a black sports utility vehicle (SUV) stranded in a median on Veterans Parkway near Coventry Lane and an African-American woman with short, curly hair "was with the vehicle." Officer Block testified that "several parties *** relayed information" to the dispatch center concerning the black SUV. One of the callers, "Rachel," reported a black SUV straddling the curb with a possibly intoxicated driver with short, curly hair. Once Officer Block arrived at that location, he confirmed that a black SUV was stranded in the median, but he did not find an African-American woman near the abandoned SUV. When describing his observations, the officer testified as follows:

> "I didn't see anybody immediately in the area of the vehicle. There wasn't a long gap of time between when the call came out and when I arrived on scene, only a couple of minutes. I looked around in all areas. There was a very open area to the west where it would be very easy to see someone walking away. To the east there is really only Coventry and Lily Field there, two streets going east/west. I could see down Coventry and see nobody down there. On Lily Field the only thing I saw was the vehicle that went from park to drive."

¶ 5    The officer explained that the vehicle that "went from park to drive" was a blue Chevy parked facing east in the westbound lane of Lily Field Lane, with the driver's-side wheels

positioned adjacent to the curb. When the officer focused his attention on the blue Chevy parked in this fashion, he saw the headlights turn on and watched the blue Chevy leave the area. After making these observations, Officer Block suspected the blue Chevy may have been involved in an accident with the SUV. Consequently, the officer pursued the blue Chevy and performed a traffic stop.

¶ 6 Once the blue Chevy pulled over, Officer Block observed an African-American woman, matching the description of the person last seen near the stranded black SUV, seated in the front passenger seat. Eventually, Officer Block arrested defendant for operating the black SUV while under the influence of alcohol and other traffic offenses.

¶ 7 The State argued that Officer Block had a reasonable, articulable suspicion to stop the blue Chevy. In addition, the State argued reasonable grounds existed for Officer Block's traffic stop of the blue Chevy based on his observation of a traffic violation. When ruling on the written motion to suppress, the court found Officer Block's testimony to be credible, but rejected the State's argument that the officer's suspicions would qualify as a reasonable basis to stop the blue Chevy in order to investigate the accident involving the black SUV.

¶ 8 However, the court noted that the officer's testimony established the officer witnessed the driver of the blue Chevy commit a traffic offense, improper lane usage, before making a decision to pursue and stop the blue Chevy. According to the court, these observations by the officer provided a probable cause basis to stop the driver of the blue Chevy for that violation. Therefore, the court found probable cause existed prior to the traffic stop and rendered the stop lawful regardless of the officer's suspicions about the link between the blue Chevy and the abandoned black SUV. On this basis, the trial court denied the defense's motion to suppress evidence gathered after the traffic stop of the blue Chevy.

¶ 9 After this unfavorable ruling, defense counsel requested and received leave to expand the scope of his motion to suppress to address the duration of the traffic stop. The defense recalled Officer Block, who admitted he did not speak to the driver of the blue Chevy about any traffic violation. The officer explained he immediately observed that the passenger of the blue Chevy matched the description he received from the dispatcher concerning the occupant of the black SUV. Officer Block noticed a strong odor of alcohol coming from inside the vehicle.

¶ 10 The officer stated he spoke to the driver of the blue Chevy about whether the driver of the blue Chevy may have witnessed the accident involving the black SUV. According to the officer, the driver of the blue Chevy responded "he was just driving by, recognized the defendant from a previous friendship and that he wanted to help her out because basically she was stuck, and that he picked her up, was going to bring her home." He asked the passenger if the black SUV stuck on the median belonged to her. After Officer Block asked the passenger to step out of the blue Chevy, he noticed she was barefoot and appeared to be under the influence of alcohol.

¶ 11 Following this testimony, the defense indicated no further evidence would be presented. The State moved for a directed finding on the expanded motion to suppress. The State argued Officer Block's questioning of defendant was justified because his observations of defendant were consistent with the dispatch received concerning the woman seen with the black SUV. The court allowed the motion for a directed finding and denied defendant's motion to suppress.

¶ 12    After this ruling, the matter immediately proceeded to a bench trial. The State's first witness was Officer David Henzler of the Bolingbrook police department. Officer Henzler testified that on February 17, 2013, at approximately 3 a.m., he was dispatched to the scene of a one-car accident. When he arrived at the scene, Officer Henzler observed a black SUV straddling the median, with its headlights on and the engine off. According to this officer, the driver's-side door to the SUV was ajar and a high-heeled shoe was positioned on the roadway approximately one foot outside the open driver's door. The officer found a matching high-heeled shoe on the driver's-side floorboard inside the SUV. He also noticed there were no keys in the ignition. Officer Henzler retrieved a Fox Valley park district identification card (ID) from the driver's-side door panel bearing the name of Herika Fakayode. Officer Henzler relayed his discovery of the two high-heeled shoes to Officer Block.

¶ 13    The State next called Ashley Jordan, who testified that on February 17, 2013, at approximately 3 a.m., she was driving home from a casino with her friend, Stephanie Sheehan, and Sheehan's sister, Rachel Ashcraft. The trio noticed a black SUV straddling the median and Jordan pulled alongside the vehicle to determine if anyone was injured. While next to the SUV, Jordan saw an African-American female, with short, straight, black hair, slumped over in the driver's seat. Jordan also observed all of the doors of the SUV were closed at that time.

¶ 14    Jordan testified that as she drove away from the black SUV, she noticed the headlights of another car behind her. Jordan pulled into the parking lot of a nearby bank and her passenger, Rachel Ashcraft, called the police. While in the bank parking lot, Jordan observed the car that was behind her stop in a residential area and watched a man leave that vehicle. While Ashcraft was on the phone, Jordan turned around and approached the black SUV to read the license plate. Jordan parked "just a couple feet away" from the black SUV, at which point she saw the man from the second vehicle, an African-American man with dreadlocks past his shoulders, speaking to the woman previously slumped over in the driver's seat. According to Jordan, this conversation occurred while the driver's-side door of the SUV was open. Jordan testified she observed the woman move over into the passenger seat of the black SUV after the man entered the driver's side of the SUV.

¶ 15    The State called Officer Block, who testified that once he stopped the blue Chevy, he approached the driver's-side window and detected a strong odor of alcohol emanating from the vehicle. He also noticed the passenger's eyes were bloodshot and glassy. Officer Block also observed the passenger to be disoriented and swaying heavily in her seat. In court, Officer Block identified defendant as the person seated in the passenger seat of the blue Chevy.

¶ 16    According to Officer Block, when he asked defendant to produce her driver's license, defendant stated she "left it in the vehicle." At that point, Officer Block requested defendant to step out of the blue Chevy so that he could speak to her separately from the driver. The officer observed defendant hold onto the door of the blue Chevy for balance. He also noted she was not wearing any shoes and had a strong odor of alcohol coming from her breath. According to Officer Block, defendant nearly fell down multiple times while conversing with him. Defendant did not answer Officer Block when he asked if she had been driving the black SUV. When the officer asked her to explain how the black SUV became stuck on the median, defendant replied, "if [you] say it's stuck, it must be stuck." Based on his observations, Officer Block opined defendant was under the influence of alcohol.

¶ 17    Officer John Tuttle of the Bolingbrook police department also testified for the State. Officer Tuttle testified he drove to the location of the traffic stop to assist Officer Block. When Officer Tuttle approached the passenger side of the blue Chevy, he noticed defendant was not wearing shoes and he did not see any shoes on the passenger floorboard. He testified that once defendant stepped out of the blue Chevy she stated she did not know where her shoes were. Officer Tuttle also concluded defendant was under the influence of alcohol.

¶ 18    Following closing arguments, the court found defendant guilty of the offenses of DUI, illegal lane usage, and failure to notify. The court found defendant not guilty of the offense of failure to reduce speed. With respect to the offense of driving under the influence of alcohol, the court acknowledged that the State presented a strong circumstantial case and listed the circumstantial evidence that the court found established defendant had been operating the black SUV while under the influence of alcohol. The court commented that the "only discrepancy" in the testimony concerned the defendant's hairstyle, but the court noted that "individual hairstyles can be described in different ways by different people." Further, the court acknowledged that Jordan did not observe "any other specifics" concerning a description of the individual she observed in the black SUV.

¶ 19                                ANALYSIS

¶ 20    First, defendant contends the trial court improperly denied her pretrial motion to suppress. In addition, defendant also claims her conviction for DUI must be reversed because the State's evidence failed to prove beyond a reasonable doubt she was in actual control of the vehicle. Defendant appeals only the court's finding of guilt with respect to the DUI conviction.

¶ 21    The State contends the motion to suppress was properly denied because Officer Block had both an articulable basis, as well as probable cause, to effectuate a traffic stop. Further, the State maintains the evidence was sufficient to prove the offense of DUI and establish defendant was in control of the black SUV beyond a reasonable doubt.

¶ 22              I. Motion to Quash Arrest and Suppress Evidence

¶ 23    We first address defendant's argument that the trial court erroneously found probable cause existed based on the driver's improper lane usage.[1] Thereafter, we will consider the defense's expanded argument claiming the officer unreasonably prolonged the lawful, initial traffic stop by questioning defendant, a passenger, about a recent accident involving another vehicle.

¶ 24    Both the federal and state constitutions protect citizens from unreasonable searches and seizures. U.S. Const., amend. IV; Ill. Const. 1970, art. I, § 6. It is well established that the propriety of a traffic stop is subject to the fourth amendment's reasonableness requirement. *Whren v. United States*, 517 U.S. 806, 810 (1996). "As a general matter, the decision to stop

---

[1]Defendant also requests this court to revisit whether the officer's suspicions gave rise to an articulable suspicion for the traffic stop. The trial court resolved this issue in favor of the defense and we elect not to address this ruling since we are affirming the trial court's finding the traffic stop was supported by probable cause.

an automobile is reasonable where the police have probable cause to believe that a traffic violation has occurred." *Id*.

¶ 25 When reviewing a ruling on a motion to suppress evidence, this court applies a two-part standard of review. *People v. Cummings*, 2014 IL 115769, ¶ 13. Findings of fact made by the trial court are reviewed for clear error and only reversed if they are against the manifest weight of the evidence. *Id*. However, the ultimate decision of whether or not suppression is warranted is a question of law that is reviewed *de novo*. *People v. Harris*, 228 Ill. 2d 222, 230 (2008).

¶ 26 Here, the court found Officer Block's testimony credible and determined Officer Block witnessed the driver of the blue Chevy commit a traffic offense, improper lane usage, before the officer decided to stop the blue Chevy as part of his ongoing investigation of the stranded black SUV. Significantly, defendant does not challenge the trial court's finding that the driver of the blue Chevy committed a traffic violation prior to being pulled over by Officer Block.

¶ 27 In this case, the trial court ruled that the officer's suspicion was insufficient to justify the decision to stop and investigate the driver of the blue Chevy. However, based on the officer's credible testimony, the trial court went on to carefully examine the facts known to the officer before electing to stop the blue Chevy. After objectively considering the facts known to the officer, the court concluded the traffic offense witnessed by the officer gave rise to probable cause to stop the driver of the blue Chevy. On this basis, the court independently concluded the traffic stop of the blue Chevy was lawful.

¶ 28 The defense argues the officer's stated, but insufficient, purpose for stopping the driver of the blue Chevy dictates the outcome of this appeal. We reject defendant's contention. Existing case law provides that the trial court may determine the constitutional reasonableness of a traffic stop and the court's determination does not necessarily depend upon the officer's admitted motivation for initiating a traffic stop. *Whren*, 517 U.S. at 813 ("Subjective intentions play no role in ordinary, probable-cause Fourth Amendment analysis."). Consequently, based on this well-accepted case law, we conclude the trial court correctly examined the facts established by the officer's testimony and determined, as a matter of law, that probable cause existed prior to the stop regardless of the officer's articulated reason for conducting the traffic stop.

¶ 29 It is clear from this record that the officer reacted quickly to prevent the blue Chevy from driving away from the area near the accident scene involving the black SUV. We would be remiss if we did not note that, even with the benefit of hindsight, the officer did not attempt to embellish his reason for quickly pursuing the blue Chevy in order to justify the stop on grounds other than his suspicions based on his police experience. Our holding does not penalize the government for the good-faith actions of this officer who, acting under exigent circumstances, truthfully reported his main objective for stopping the blue Chevy was to investigate whether that driver had information about the black SUV.

¶ 30 The lawfulness of a traffic stop, when challenged by a motion to quash an arrest or suppress evidence, must be measured by the *trial judge* rather than dictated by the officer's reasoning formulated under exigent circumstances. Here, the trial court found the traffic stop was lawful since the officer first observed a traffic violation before initiating the stop. We note defendant does not contest the court's finding that the driver of the blue Chevy committed improper lane usage or argue the court's factual determination was contrary to the

weight of the evidence. Therefore, based on this record, we conclude the trial court properly denied defendant's motion to suppress.

¶ 31    Next, we consider defendant's contention that Officer Block unlawfully prolonged the duration of the stop when he changed his focus from the driver to defendant, a passenger of the blue Chevy. In support of this argument, defendant relies on case law indicating that when a stop is unduly prolonged, the initial lawful traffic stop may "become unlawful." *Illinois v. Caballes*, 543 U.S. 405, 407 (2005). The defense seems to imply the officer did not develop a reasonable, articulable suspicion to question defendant, a passenger, about the stranded black SUV. We disagree.

¶ 32    Significantly, the case law provides that "the police may ask questions unrelated to the original detention and are not required to form an independent reasonable suspicion of criminal activity before doing so." *Harris*, 228 Ill. 2d at 242-43. Immediately after stopping the blue Chevy, the driver told the officer the driver found defendant "stuck" and offered her a ride home. Within moments, the officer realized the intoxicated, African-American woman seated in the passenger seat of the blue Chevy matched a bystander's description of the person she observed slumped over the steering wheel of the black SUV.

¶ 33    Contrary to defendant's position on appeal, the decision in *Cummings* does not support defendant's argument that Officer Block impermissibly extended the duration of this traffic stop when he abandoned his suspicions of the driver and turned his attention to defendant. The facts in *Cummings* are distinguishable, since the officer in that case did not observe any traffic violation prior to that traffic stop, unlike the case at bar.

¶ 34    In this case, defendant did not offer any testimony to the court establishing the amount of time for this particular traffic stop. Absent evidence from the defense allowing us to determine how much time elapsed during the traffic stop, we will not speculate concerning the length of time this traffic stop consumed. Therefore, we conclude the trial court properly allowed the State's request for a directed finding.

¶ 35    Further, defendant's reliance on *Caballes* to support the view that this stop was prolonged is misplaced. We note that in *Caballes*, the court held the traffic stop *did not* extend beyond a reasonable amount of time necessary to complete an ordinary traffic investigation of the driver when the police also investigated suspected drug activity that was unrelated to the traffic offense supporting the stop itself.

¶ 36    Based on existing case law, we conclude the trial court properly allowed the State's motion for a directed finding pertaining both to the existence of probable cause and the duration of this particular traffic stop. The trial court's decision to deny the motion to suppress is affirmed.

¶ 37                              II. Sufficiency of the Evidence at Trial

¶ 38    Next, defendant argues the State's evidence failed to establish a necessary element of the offense of DUI. Specifically, defendant claims the State did not prove she was in actual physical control of the black SUV at the time of the purported accident. Curiously, defendant does not challenge the trial court's findings that she was the driver of the black SUV upon a highway for purposes of her other convictions for improper lane usage (625 ILCS 5/11-709(a) (West 2012)) and failure to notify authorities of an accident (625 ILCS 5/11-406(a) (West 2012)).

¶ 39    This court reviews a challenge to the sufficiency of the evidence to determine whether any rational trier of fact could have found the essential elements of the crime beyond a reasonable doubt. *People v. Baskerville*, 2012 IL 111056, ¶ 31. When making this determination, we review the evidence in the light most favorable to the prosecution. *Id*. All reasonable inferences from the record in favor of the prosecution will be allowed. *People v. Bush*, 214 Ill. 2d 318, 326 (2005). Circumstantial evidence is sufficient to sustain a conviction, provided the elements of the crime have been proven beyond a reasonable doubt. *People v. Sutherland*, 223 Ill. 2d 187, 242-43 (2006).

¶ 40    In this case, defendant was charged with driving under the influence of alcohol, in violation of section 11-501(a)(2) of the Vehicle Code. Section 11-501(a)(2) dictates that "[a] person shall not drive or be in actual physical control of any vehicle within this State while: *** (2) under the influence of alcohol." 625 ILCS 5/11-501(a)(2) (West 2012).

¶ 41    In support of her argument that the State failed to prove she was in actual control of the black SUV for purposes of the DUI, defendant points out that she did not admit she was the driver of that vehicle and the SUV's keys were not located in defendant's possession. However, Jordan's testimony established an African-American woman with short, straight hair was "with" the black SUV. Defendant puts great emphasis on the fact that she has curly hair, contradicting the testimony provided by Jordan.

¶ 42    The trial court explicitly considered this discrepancy between Jordan's testimony and Officer Block's testimony about the woman's hairstyle and found the divergent descriptions to be attributable to equally plausible perceptions of the same hairstyle by two different observers. This issue was resolved by the trier of fact, who was in a superior position to evaluate the credibility of the witnesses and we will not disturb this finding.

¶ 43    With respect to her identification as the driver of the black SUV, defendant ignores Officer Henzler's testimony about the shoes left in and near the black SUV. Defendant also ignores Officer Tuttle's testimony that defendant was barefoot and admitted she did not know where her shoes were located when she stepped out of the blue Chevy. These circumstances provide compelling evidence which support the court's determination that defendant was the driver of the black SUV when the black SUV became stranded on the median.

¶ 44    This circumstantial evidence supports the finding that defendant was in actual, physical control of the black SUV before the driver of the blue Chevy picked her up and offered her a ride home. We also note that defendant has not challenged the court's finding that she was operating the black SUV for purposes of her convictions for improper lane usage and failure to notify authorities of an accident. For the reasons set forth above, we conclude the State's evidence was sufficient to establish defendant's guilt for the offense of DUI beyond a reasonable doubt.

¶ 45                                    CONCLUSION
¶ 46    The judgment of the circuit court of Will County is affirmed.

¶ 47    Affirmed.