**NOTICE:** This order was filed under Supreme Court Rule 23 and is not precedent except in the limited circumstances allowed under Rule 23(e)(1).

2021 IL App (3d) 190124-U

Order filed April 14, 2021

_____

IN THE

APPELLATE COURT OF ILLINOIS

THIRD DISTRICT

2021

| | | |
|---|---|---|
| THE PEOPLE OF THE STATE OF ILLINOIS, | ) ) ) | Appeal from the Circuit Court of the 14th Judicial Circuit, Whiteside County, Illinois, |
| Plaintiff-Appellee, | ) ) | |
| v. | ) ) | Appeal No. 3-19-0124 Circuit No. 15-CF-343 |
| DANIEL S. McCUNE, | ) ) ) | Honorable Patricia A. Senneff, |
| Defendant-Appellant. | ) | Judge, Presiding. |

_____

PRESIDING JUSTICE McDADE delivered the judgment of the court.
Justices Holdridge and Lytton concurred in the judgment.

_____

**ORDER**

¶ 1     *Held*:  The State presented evidence sufficient to allow a reasonable trier of fact to find defendant guilty beyond a reasonable doubt.

¶ 2     Defendant, Daniel S. McCune, appeals following a jury trial in which he was found guilty of aggravated driving under the influence (DUI). He argues that the evidence presented at trial was insufficient to establish his guilt beyond a reasonable doubt. We affirm.

¶ 3                                    I. BACKGROUND

¶ 4        The State charged defendant with four counts of aggravated DUI. It dropped the first two counts prior to trial. Count III alleged that defendant was in actual physical control of a motor vehicle while the alcohol concentration in his blood or breath was 0.16 or more (625 ILCS 5/11-501(a)(1), (d)(2)(B) (West 2014)). Count IV alleged that defendant was in actual physical control of a motor vehicle while under the influence of alcohol (*id.* § 11-501(a)(2), (d)(1)(A)). Both counts alleged that defendant had violated the DUI statute on two prior occasions.

¶ 5        At defendant's jury trial, Officer Douglas Wolber of the Rock Falls Police Department testified that he was on patrol on June 22, 2014. It was a warm day. Wolber was dispatched to the "lower dam" area of Rock Falls at 11:42 a.m., following a call reporting that a vehicle had run into a concrete barrier in that area. Wolber received no information that any party had been seen leaving or fleeing the area.

¶ 6        Upon arriving at the scene, Wolber observed a brown Jeep, the front of which "was touching a large concrete barricade." The hood of the Jeep was "slightly popped up" and the windshield wipers were activated. The engine was running, and the Jeep was in drive. The air conditioner was not on. Wolber put the Jeep in park and turned off the engine. Wolber testified that when he put the Jeep in park, it rocked back slightly such that it was no longer touching the barricade.

¶ 7        Wolber observed defendant in the backseat of the Jeep, lying down and sweating profusely. Defendant was unresponsive. Wolber detected a strong odor of an alcoholic beverage. He called for paramedics. After assisting paramedics in moving defendant from the Jeep to an ambulance, Wolber discovered a half-empty bottle of vodka in the glove compartment and an empty vodka bottle on the backseat floorboard. Wolber also found a number of items bearing defendant's name in the Jeep.

2

¶ 8        Paramedic Larri Dirks testified that when he arrived at the scene defendant was unresponsive in the backseat of the Jeep. Dirks's attempts to rouse defendant were unsuccessful. Dirks also noticed an odor of an alcoholic beverage emanating from defendant. Dirks helped extract defendant from the Jeep and treated him for heat stroke in the ambulance. Defendant did not begin mumbling or moving his extremities until arriving at the emergency room.

¶ 9        Michael Galle, a doctor working in the emergency room on the day in question, testified that defendant's "blood serum" level was 336 milligrams per deciliter of blood. Galle testified that a normal range for that level is between 0 and 80. Eighty milligrams is commonly known as the 0.08 legal limit, such that 336 milligrams is approximately four times the legal limit.

¶ 10        Defendant testified that he woke on June 22, 2014, experiencing symptoms from alcohol withdrawal. The liquor store opened at 10 a.m., at which point defendant purchased a bottle of vodka. He then drove to the lower dam area, which took approximately four minutes. Defendant agreed that he was driving a Jeep. Upon arrival at the lower dam, defendant parked the Jeep 8 to 10 inches away from a concrete barrier.

¶ 11        Defendant turned off the engine before exiting the Jeep. He did not activate the windshield wipers. Defendant checked the oil on the Jeep, put the keys in his pocket, then walked across the parking lot. He then opened the bottle of vodka for the first time and began to drink.

¶ 12        Defendant drank for approximately an hour and a half or an hour and 45 minutes. He drank about half of the fifth of vodka. Defendant admitted that after consuming the alcohol, he felt "drunk" and intoxicated. He returned to his Jeep to retrieve his phone and put the bottle of vodka in the glove compartment. He accessed the glove compartment by standing outside the passenger door. Defendant then called a friend to request a ride home. Upon learning that his

friend would arrive in two hours, defendant entered the backseat to take a nap. He did not turn on the Jeep's air conditioning. He put the keys in the center console and denied ever putting the keys back into the ignition or sitting in the driver's seat. The next thing defendant remembered was waking up in the hospital.

¶ 13      The jury found defendant guilty on count IV, aggravated DUI based on impairment, and not guilty on count III, aggravated DUI based on blood-alcohol level. The court sentenced defendant to a term of 180 days in jail and 48 months' probation.

¶ 14      II. ANALYSIS

¶ 15      On appeal, defendant argues that the evidence was insufficient to prove that he was in actual physical control of his Jeep while under the influence of alcohol. More specifically, he argues that he "was not in actual physical control of the Jeep *** and he was entirely incapable of moving the Jeep because he was unconscious in the back seat of the vehicle." In turn, defendant maintains that the evidence shows he could not exercise any power or influence over the Jeep because of his physical condition.

¶ 16      When a challenge is made to the sufficiency of the evidence at trial, we review to determine whether any rational trier of fact could have found the essential elements of the crime beyond a reasonable doubt. *People v. Collins*, 106 Ill. 2d 237, 261 (1985). In making this determination, we review the evidence in the light most favorable to the prosecution. *People v. Baskerville*, 2012 IL 111056, ¶ 31.

¶ 17      It is not the purpose of a reviewing court to retry a defendant. *People v. Milka*, 211 Ill. 2d 150, 178 (2004). Instead, great deference is given to the trier of fact. See, *e.g.*, *People v. Saxon*, 374 Ill. App. 3d 409, 416-17 (2007). All reasonable inferences from the record in favor of the prosecution will be allowed. *People v. Bush*, 214 Ill. 2d 318, 326 (2005). " 'Where evidence is

4

presented and such evidence is capable of producing conflicting inferences, it is best left to the trier of fact for proper resolution.' " *Saxon*, 374 Ill. App. 3d at 416 (quoting *People v. McDonald*, 168 Ill. 2d 420, 447 (1995)). The trier of fact is not required to accept or otherwise seek out any potential explanations of the evidence that are consistent with a defendant's innocence; nor is the trier of fact required to disregard any inferences that do flow from the evidence. *McDonald*, 168 Ill. 2d at 447; see also *Saxon*, 374 Ill. App. 3d at 416-17. Finally, the same standard of review applies regardless of whether the evidence presented at trial is direct or circumstantial. *People v. Pollock*, 202 Ill. 2d 189, 217 (2002). Circumstantial evidence alone will be sufficient to sustain a conviction where it establishes proof beyond a reasonable doubt. *Id.*

¶ 18        In the present case, Wolber testified that when he first encountered the Jeep, its engine was running, it was in drive, and the windshield wipers were on. Defendant was unresponsive in the backseat. While defendant argues, in part, that portions of this testimony contradicted his own, it is apparent that the jury found Wolber's testimony credible. On review, the jury's credibility determinations are entitled to great deference (see *People v. Wheeler*, 226 Ill. 2d 92, 115 (2007)), and, in fact, defendant does not argue that this court should reject the jury's assessment of Wolber's credibility.

¶ 19        Defendant testified that he turned the engine off and took his keys with him before drinking. He then returned to the Jeep—at a time he was admittedly intoxicated—with his keys. Given that Wolber found defendant in a vehicle that was running, the jury could reasonably infer from this evidence that it was defendant who turned the Jeep on and put it into drive prior to going into the backseat to fall asleep. This reasonable inference must be indulged based on our standard of review, even if other contrary inferences may also be reasonable. *Bush*, 214 Ill. 2d at 326; *McDonald*, 168 Ill. 2d at 447. It follows that a reasonable trier of fact, having drawn this

5

reasonable inference, could have concluded beyond a reasonable doubt that defendant was in actual control of his Jeep while under the influence of alcohol.

¶ 20                                              III. CONCLUSION

¶ 21              The judgment of the circuit court of Whiteside County is affirmed.

¶ 22              Affirmed.