THE PEOPLE OF THE STATE OF ILLINOIS, Plaintiff-Appellant, v. JOHN A. GOEBEL, Defendant-Appellee.

Second District No. 2—95—0698

Opinion filed October 24, 1996.

Michael P. Bald, State's Attorney, of Freeport (William L. Browers and Mary Beth Burns, both of State's Attorneys Appellate Prosecutor's Office, of counsel), for the People.

No brief filed for appellee.

JUSTICE HUTCHINSON delivered the opinion of the court:

The State appeals from the order of the circuit court of Stephenson County granting the motion of the defendant, John A. Goebel, to dismiss an amended information filed against him on January 9, 1995. The State's motion to reconsider was denied, and this timely appeal was filed. We reverse and remand.

The State petitioned this court for leave to supply us with additional authority; we granted the State's petition. On appeal to this court, the State raises one issue: whether reversal of the trial court's dismissal order is required, based on the authority of *People v. DiLorenzo*, 169 Ill. 2d 318 (1996). The State contends that the allegations in the amended information were sufficient to state the offense of aggravated criminal sexual abuse. We agree with the State.

Defendant was charged by information with the offense of criminal sexual assault. The information was later amended to charge defendant with committing the offense of aggravated criminal sexual abuse. The amended information alleged:

"[Defendant], on or about the *10th day of November 1992* at and within Stephenson County, Illinois did commit the offense of *AGGRAVATED CRIMINAL SEXUAL ABUSE in violation of Chapter 38, Illinois Revised Statutes *** Section 12—16(b)* in that said defendant, [a family member] of [D.R.], knowingly committed an act of sexual conduct with [D.R.], who was under 18 years of age when the act was committed, in that said defendant rubbed his penis against the buttocks of [D.R.]." (Emphasis in original.)

■ Section 12—16(b) of the Criminal Code of 1961 reads in pertinent part:

"The accused commits aggravated criminal sexual abuse if he or she commits an act of sexual conduct with a victim who was under 18 years of age when the act was committed and the accused was a family member." 720 ILCS Ann. 5/12—16(b) (Smith-Hurd Supp. 1996).

The Criminal Code of 1961 defines "sexual conduct" in pertinent part as "any intentional or knowing touching or fondling by *** the accused *** of the sex organs *** of the victim *** for the purpose of sexual gratification or arousal of the victim or the accused." 720 ILCS Ann. 5/12—12(e) (Smith-Hurd Supp. 1996).

Defendant was tried before a jury on January 10-12, 1995. The State's first witness was the victim, D.R. D.R. testified to the events occurring on or about November 8 and 9, 1992, in which she, defendant, and her sister, Tonya, were at the residence of defendant and his wife, Darcy. D.R. testified that the three of them, D.R., Tonya, and defendant, were painting the kitchen, and, by the end of the evening, D.R. had paint in her hair and clothes. She testified that she went upstairs to take a bath, but, because the paint was still in her hair, she called to her sister for assistance. Defendant, instead, went upstairs into the bathroom and suggested she go to the basement and shower the paint out of her hair. D.R. testified that, upon exiting from the shower in the basement, defendant had come down the stairs, led her towards a workout bench, and, with her back facing him, exposed his penis to her. He then "started rubbing his penis up and down on [her] butt." D.R. also testified that defendant told her that she was too beautiful for her own good.

D.R. testified that another incident occurred at defendant's residence after a funeral sometime at the end of June 1992. She testified that she and defendant went downstairs to talk, but that defendant

started rubbing her back and put his hand down her pants. She testified that defendant took off D.R.'s pants, kissed her breasts, put his finger in her vagina, and then put his mouth on her vagina. Defendant then exposed his penis to her, ejaculated, and instructed D.R. to taste the semen.

According to D.R.'s testimony, another incident took place at defendant's residence around October 1992. D.R. testified that she and defendant were in the living room and she had been getting him beers from the refrigerator when he told her to go upstairs "so Darcy won't get suspicious." She testified that they went upstairs and defendant turned on the television. Defendant then proceeded to pull down D.R.'s pants, kiss her breasts and vagina, and put his finger in her vagina.

D.R. next testified to an incident occurring in mid to late June 1993 at defendant's newly purchased residence. D.R., among others, was helping defendant renovate the residence prior to defendant and his family moving in. D.R. testified that, on this occasion, she had just finished going to the bathroom, but, before she could pull up her underwear and pants, defendant came in and put his fingers on her vagina and talked about his sex drive. D.R. testified that defendant then stopped, apologized, and said he could not help himself. She testified they then took a tour of the house, and, while they were upstairs, defendant laid D.R. down, took her pants down, and lifted her shirt and bra, exposing her breasts. D.R. testified that defendant then put his fingers in her vagina, kissed her breasts and vagina, and then attempted, but failed, to put his penis in her vagina. Defendant then instructed her to put her mouth on his penis, but then stopped and told her to get a cup. D.R. testified she went downstairs, got the cup, went back upstairs, and defendant again told her to put her mouth on his penis. D.R. said defendant then ejaculated in her mouth. Defendant then performed oral sex on D.R. D.R. testified that, during the ensuing conversation, defendant stated that "he didn't know if most [family members] did this but he thought they should because he was trying to teach [her]" about sex.

On cross-examination, counsel for defendant attempted to elicit from D.R. specific dates, times, and places of the incidents, and whether any witnesses were present.

Tonya, sister of D.R., testified next, and she recalled the events surrounding the November 8 and 9, 1992, incident. Tonya testified that D.R. had taken a bath upstairs after painting that evening and had called for Tonya, but that defendant went upstairs instead. She then testified that D.R. went to the basement to take a shower, and minutes later, while D.R. was still in the basement, defendant went

downstairs. On cross-examination, Tonya testified as to her employment history, her knowledge of the June 1992 funeral, her recollection that defendant was in the basement with D.R. in November 1992, and the terms of her visitation with defendant.

The State's last witness was Officer Richard Roodhouse. He testified about the investigation of the allegations against defendant. Roodhouse testified that defendant acknowledged his hand "fell against her breast" on one occasion and, on another occasion, D.R. was getting up from a couch and she put her hand on defendant's groin or penis. Roodhouse testified that defendant said he "didn't remove [either his hand from her breast or her hand from his groin or penis] right away because he had taken some psychology courses, and the *** courses had taught him not to do so because it would make that gesture appear dirty." He also testified that defendant acknowledged taking the girls for rides in the country and talking about sex "because he didn't want [them] to be naive about sex." Defendant also told Roodhouse that D.R. had the dates all wrong.

Defendant's brother, James, testified for the defendant. James testified about the events surrounding the June 1992 funeral and his work schedule.

Defendant's brother, Bill, testified next about the events of the June 1992 funeral.

Six other witnesses testified that they helped remodel or observed the remodeling of defendant's new home.

Darcy, defendant's wife, testified next. She testified as to the events surrounding the June 1992 funeral, the routine she typically followed, and observations she made during the remodeling of her and defendant's new home.

Defendant testified next. Defendant categorically denied all incidents of sexual abuse. Regarding the November 8 and 9, 1992, incident, defendant testified that both Tonya and D.R. were in the bathroom upstairs trying to get paint out of D.R.'s hair. Defendant testified that he told D.R., through the bathroom door, to go to the basement and let the shower water "beat [the paint] out" of her hair. Defendant testified that Tonya stayed in the bathroom upstairs while D.R. went down to the basement and took a shower. He testified that he stayed in the kitchen and did not go into the basement until D.R. had already gone back upstairs into the bathroom where Tonya was. After that, he testified, he went to the basement and stoked the wood-burning furnace and was only in the basement for approximately five minutes.

Defendant acknowledged his conversations with Roodhouse regarding defendant touching D.R.'s breast and her touching his

groin. On cross-examination, defendant also testified to only two occasions, occurring years apart, when he was driving in the country that he talked with his daughters about sex. Defendant testified regarding the psychology course that he took, but never finished, where he learned not to take his hand away from D.R.'s breast too quickly or remove D.R.'s hand from his groin or penis because it would make the gesture appear dirty. Defendant also testified that on November 9, 1992, the only people painting and remodeling in his new house were himself, Tonya, and D.R.

Before the case was given to the jury for decision, defendant moved to have the charge dismissed. Defendant argued that the charge did not state an offense and asserted that the evidence did not support a conviction.

After hearing the arguments of counsel, the trial court first denied the motion for a directed finding, stating that "the evidence is sufficient that a jury can reasonably find the defendant guilty of the charge." The trial court then discussed defendant's motion to dismiss and determined that dismissal should be granted because the charge failed to state an offense.

In granting the motion, the trial court explained that an allegation regarding the child victim's buttocks did not charge the offense of aggravated criminal sexual abuse, relying on *People v. Nibbio*, 180 Ill. App. 3d 513 (1989). However, after the parties filed post-judgment motions, the trial court reconsidered its reasoning. On reconsideration, the trial court agreed with the State that sexual conduct includes the knowing touching of the victim's body by the penis of the accused. However, to prosecute such a charge, the State must allege and prove that the touching was done "for the purpose of sexual gratification or arousal of the victim or of the accused." 720 ILCS Ann. 5/12—12(e) (Smith-Hurd Supp. 1996). Relying on *People v. Edwards*, 195 Ill. App. 3d 454 (1990), the trial court stated that that element was not alleged in the amended information and the order dismissing the charge would stand.

■ Before addressing the State's argument, we note that defendant failed to file a brief in this appeal. However, because we find the issue presented relatively straightforward, we may decide this case without an appellee's brief in accordance with *First Capitol Mortgage Corp. v. Talandis Construction Corp.*, 63 Ill. 2d 128, 133 (1976) (holding that a reviewing court should decide the merits of an appeal where the record is simple and the claimed error is such that a decision can be made easily without the aid of an appellee's brief); see also *Exline v. Exline*, 277 Ill. App. 3d 10, 13 (1995).

The State argues that reversal of the trial court's dismissal order

is required, relying on the authority of *People v. DiLorenzo*, 169 Ill. 2d 318 (1996). The State contends that, based on *DiLorenzo*, the allegations in the amended information were sufficient to state the offense of aggravated criminal sexual abuse.

■ We are obliged to follow the precedents of our supreme court. A settled rule of law that contravenes no statute or constitutional principles should be followed under the doctrine of *stare decisis* unless it can be shown that serious detriment prejudicial to the public interest is likely to result. *Pasquale v. Speed Products Engineering*, 166 Ill. 2d 337, 349 (1995). *Stare decisis* is a policy of the courts to stand by precedent and leave settled points of law undisturbed. *Charles v. Seigfried*, 165 Ill. 2d 482, 492 (1995). Additionally, our appellate court lacks the authority to overrule or modify decisions of our supreme court. *People v. Woodard*, 276 Ill. App. 3d 242, 245 (1995); *Vonholdt v. Barba & Barba Construction, Inc.*, 276 Ill. App. 3d 325, 329 (1995). Thus, it is our duty to examine the *DiLorenzo* decision and determine whether the material facts found by the Illinois Supreme Court in *DiLorenzo* are similar to or different from those facts in the present case.

In *DiLorenzo*, the defendant was charged with, *inter alia*, aggravated criminal sexual abuse (Ill. Rev. Stat. 1991, ch. 38, par. 12—16(c)(1)(i) (now 720 ILCS Ann. 5/12—16(c)(1)(i) (Smith-Hurd Supp. 1996))). The indictment was in writing, specifically named the alleged committed offenses, and provided citation to the relevant statutory provisions, date of the offenses, county of their occurrence, and the defendant's name. Further, the indictment, in the words of the statute, stated that the defendant committed the offense of aggravated criminal sexual abuse in that

"he, who was 17 years of age or older, knowingly committed an act of sexual conduct with [C.R.] who was under 13 years of age when the act was committed."

Following a bench trial, the defendant was found guilty of aggravated criminal sexual abuse and was sentenced; the appellate court affirmed. The defendant appealed, asserting that the indictment was fatally defective in that the aggravated criminal sexual abuse charge failed to explicitly state that the alleged "sexual conduct" with C.R. was "for the purpose of sexual gratification or arousal of the victim or the accused" and also that the indictment failed to set forth with particularity the allegedly wrongful acts that constituted "sexual conduct."

The *DiLorenzo* defendant failed to challenge the sufficiency of the charging instrument in a pretrial motion. Therefore, the *DiLorenzo* court declined to discuss the sufficiency of the charging instrument

when attacked in a pretrial motion. Because defendant in the present case also waited until the conclusion of the trial to attack the information's sufficiency, we too decline to address the issue of a pretrial attack of the charging instrument.

 Instead, the *DiLorenzo* court stated that, when the sufficiency of a charging instrument is attacked for the first time on appeal, the standard of review is whether the charging instrument apprised the defendant of the precise offense charged with enough specificity to (1) allow preparation of her or his defense and (2) allow pleading a resulting conviction as a bar to future prosecution arising out of the same conduct. *DiLorenzo*, 169 Ill. 2d at 321-22, citing *People v. Thingvold*, 145 Ill. 2d 441, 448 (1991).

The *DiLorenzo* court determined that the phrase "for the purpose of sexual gratification" or the definition of "sexual conduct" was unnecessary to its disposition and declined to distinguish our rationale in *People v. Edwards*, 195 Ill. App. 3d 454 (1990). In *Edwards*, the defendant appealed two of his convictions of aggravated criminal sexual abuse on the grounds that the convictions were improperly charged. The defendant argued that, because the charges were based upon the defendant's "sexual conduct" with the victim, the charging instrument should have included the relevant provision of the statute, "for the purpose of sexual gratification or arousal of the victim or the accused." 720 ILCS Ann. 5/12—12(e) (Smith-Hurd Supp. 1996).

This court reversed those convictions, stating that reference to the definition of "sexual conduct" was essential to the offense of aggravated criminal sexual abuse. *Edwards*, 195 Ill. App. 3d at 457. In interpreting clauses and definitions in statutes, courts should construe those words in accordance with the statutory definition. *DeBois v. Department of Employment Security*, 274 Ill. App. 3d 660, 664 (1995). Because the charges in *Edwards* were, for the most part, expressed in the language of the "sexual conduct" definition and because the charges omitted the element that the relevant conduct was committed "for the purpose of sexual arousal or gratification," we held that the charges failed both to set forth fully the nature and elements of the offense and to be as fully descriptive as the language of the statute. *Edwards*, 195 Ill. App. 3d at 457.

In disregarding the *Edwards* rationale, the *DiLorenzo* court theorized that, should the defendant have needed to know "some of the details" of the charge, the defendant could have filed a request for a bill of particulars. Our supreme court concluded that the defendant was aware of the nature of the charges against him and that no impediment existed in the preparation of his defense as a result of the manner in which the indictment charged the offenses. *DiLorenzo*, 169 Ill. 2d at 324-25.

■ We determine that the material facts in the case at bar are sufficiently analogous to the material facts of the *DiLorenzo* case. The amended information apprised defendant of the precise offense charged with enough specificity to allow preparation of his defense and to allow pleading a resulting conviction as a bar to future prosecution arising out of the same conduct. Our own review of the record indicates that defendant was fully cognizant of the nature of the charges against him, that he was being tried for "an act of sexual conduct with [D.R.]." Defendant called 10 witnesses, including himself, to refute the specifically charged offense occurring on or about November 10, 1992, as well as the allegations surrounding the June 1992 incident taking place after the relative's funeral. Though defendant did not specifically defend against each of the incidents to which D.R. testified, on at least two occasions in the report of proceedings defendant did offer a blanket denial of all allegations concerning sexual abuse of D.R. Counsel for defendant cross-examined D.R. in depth, attempting to elicit specific dates, places, times, and witnesses present. Furthermore, defendant even secured broadcast schedules from an area television station to defend against the alleged October 1992 incident.

Pursuant to the doctrine of *stare decisis*, we adhere to the decision of our supreme court in *DiLorenzo* and reverse the trial court's order dismissing the amended information charge against defendant. To the extent our holding in *Edwards* is inconsistent with this result, *Edwards* is overruled.

■ Finally, we compare the date of the disposition of *DiLorenzo* with the pendency of the present case. *DiLorenzo* was disposed of on February 15, 1996, while the instant case was dismissed by the trial court on May 3, 1995. The State timely filed its appeal, thus effecting a continuation in the proceedings. See 134 Ill. 2d R. 606. In reversing the trial court's dismissal of the charging instrument, we recognize that our supreme court has the inherent power to give its decisions prospective or retrospective application. See *Berryman Equipment v. Industrial Comm'n*, 276 Ill. App. 3d 76, 79 (1995). Generally, a supreme court decision applies retroactively to cases pending at the time the decision is announced. *People v. Granados*, 172 Ill. 2d 358, 365 (1996). A decision will be applied retroactively unless the court expressly declares that its decision is a clear break with the past, such as when it explicitly overrules its own past precedent, disapproves a previously approved practice, or overturns a well-established body of lower court authority. *People v. Phillips*, 219 Ill. App. 3d 877, 879 (1991). Because the *DiLorenzo* decision offers no such declarations warranting only prospective application, its holding will be ap-

plied retroactively, and, thus, *DiLorenzo* is controlling in the appeal before us.

For the foregoing reasons, the judgment of the circuit court of Stephenson County is reversed, and the cause is remanded for further proceedings.

Reversed and remanded.

GEIGER and RATHJE, JJ., concur.