# Illinois Official Reports

## Appellate Court

---

*People v. Smith*, 2015 IL App (1st) 122306

---

| | |
|---|---|
| Appellate Court Caption | THE PEOPLE OF THE STATE OF ILLINOIS, Plaintiff-Appellee, v. MARC SMITH, Defendant-Appellant. |
| District & No. | First District, Sixth Division<br>Docket No. 1-12-2306 |
| Filed<br>Rehearing denied<br>Modified opinion filed | August 21, 2015<br>November 9, 2015<br>November 13, 2015 |
| Decision Under Review | Appeal from the Circuit Court of Cook County, Nos. TT-459-937, TT-459-939; the Hon. Susan Kennedy Sullivan, Judge, presiding. |
| Judgment | Reversed and remanded. |
| Counsel on Appeal | Michael J. Pelletier and Michael Gomez, both of State Appellate Defender's Office, of Chicago, for appellant.<br><br>Anita M. Alvarez, State's Attorney, of Chicago (Alan J. Spellberg, Jeffrey Allen, and Margaret M. Smith, Assistant State's Attorneys, of counsel), for the People. |
| Panel | PRESIDING JUSTICE ROCHFORD delivered the judgment of the court, with opinion.<br>Justices Hoffman and Hall concurred in the judgment and opinion. |

**OPINION**

¶ 1    A jury convicted defendant, Marc Smith, of driving on a suspended license (625 ILCS 5/6-303(a) (West 2010)) and driving with an alcohol concentration of 0.08 or more (625 ILCS 5/11-501(a)(1) (West 2010)) and acquitted him of driving under the influence of alcohol (625 ILCS 5/11-501(a)(2) (West 2010)). On the conviction for driving on a suspended license, the trial court sentenced defendant to 24 months' conditional discharge. On the conviction of driving with an alcohol concentration of 0.08 or more, the trial court sentenced defendant to a concurrent term of 24 months' conditional discharge, as well as 360 hours of community service, a 30-hour alcohol treatment program, a victim impact panel, and $200 in fines. On appeal, defendant challenges only his conviction of driving with an alcohol concentration of 0.08 or more, arguing that the trial court erred in admitting the result of his Breathalyzer test, without which there was no evidence proving his guilt beyond a reasonable doubt. We reverse and remand for a new trial.

## I. PRETRIAL PROCEEDINGS

¶ 3    Defendant filed a motion *in limine* seeking to exclude the result of the Breathalyzer test administered to him on March 19, 2010, because, based on documents in defendant's possession, the Breathalyzer machine was not properly certified as accurate. At the hearing on the motion *in limine* on the first day of trial, defendant argued that pursuant to the applicable administrative regulations (20 Ill. Adm. Code 1286.200 (2009) and 20 Ill. Adm. Code 1286.230 (2011)), the State needed to prove, as a foundation for admission, that the Breathalyzer machine had been certified as accurate within 62 days before his test. The police station's logbook indicated, however, that the Breathalyzer machine was certified as accurate about 120 days prior to defendant's test.

¶ 4    The State claimed that the Breathalyzer machine had been electronically certified as accurate within the relevant time frame, as indicated in a letter and report (referred to collectively herein as the "electronic certification") from the Illinois State Police, dated March 2, 2011, about 13 months before trial. The letter, signed by the "Keeper of Records" of the Alcohol and Substance Testing Section of the Illinois State Police Academy, and notarized by a notary public, stated that it was made in response to a subpoena *duces tecum* and indicated that the Breathalyzer machine had been tested for accuracy on March 1, 2010, and April 1, 2010. The report provided numerical data, but did *not* provide any interpretation of that data and did not state whether or not the Breathalyzer machine passed the accuracy tests.

¶ 5    Defendant argued that the State had never tendered the electronic certification during pretrial discovery, though the State apparently had the document in its possession for over a year. Defendant argued he had based his defense on the State's apparent inability to provide the necessary foundation for admission of the Breathalyzer test result, and that the court should exclude the electronic certification and, by extension, the Breathalyzer test result based on the State's "egregious" delay and discovery violation.

¶ 6    The State claimed it had tendered the electronic certification to the defense at an earlier pretrial hearing. The trial court initially noted that it was unaware of such a tender because a different judge presided over the earlier pretrial hearing and no indication was made in the record that the State had tendered the electronic certification to the defense on that date.

¶ 7        The trial court subsequently noted, though, that the regular practice was for the court to receive the electronic certification in a manila envelope and for the court to then hand the electronic certification to the State in the presence of defendant. Accordingly, as defendant likely would have been made aware of the electronic certification on the date it was presented to the State in open court, there was no discovery violation and, therefore, the trial court denied defendant's motion *in limine* to exclude the Breathalyzer test result.

¶ 8        The State later asked the court, outside the presence of the jury, to rule on the admissibility of the electronic certification of the Breathalyzer machine. Over defense objection, the trial court ruled that the electronic certification was admissible as a self-authenticating business record. See Ill. R. Evid. 803(6) (eff. Apr. 26, 2012); 902(11) (eff. Jan. 1, 2011).

¶ 9                                    II. TRIAL

¶ 10        At trial, Howard Phillips testified that at approximately 4 p.m. on March 19, 2010, he was driving his Chrysler west on 79th Street and stopped at a red light at 79th Street and Kedzie Avenue. Four vehicles were ahead of him at the stoplight. He heard a vehicle approaching behind him, looked in the rearview mirror, observed defendant driving the vehicle, and thought the vehicle was moving too fast and might hit him.

¶ 11        Defendant's vehicle struck Howard's Chrysler, causing the Chrysler to strike a light pole. Both of Howard's knees were broken as a result of the collision. Howard was taken to the hospital for surgery on his knees.

¶ 12        Officer Rodriguez testified he received a call at about 4 p.m. on March 19, 2010, to respond to a traffic crash near 79th Street and Kedzie Avenue. When he arrived at the scene, Officer Rodriguez saw a Volvo facing east in the westbound lane closest to the median, a Chrysler was wrapped around a light pole, and a Volkswagen was on the other side of the median with a cracked windshield.

¶ 13        Defendant was at the scene, being treated inside an ambulance. Defendant was asked if he wanted to go to the hospital, and he said no. The paramedic told Officer Rodriguez that defendant was a driver of one of the vehicles involved in the accident. Officer Rodriguez and defendant then walked toward the officer's car. Officer Rodriguez noticed that defendant's eyes were red and bloodshot. Defendant told the officer his name, and Officer Rodriguez entered the name in his portable data terminal and ascertained that defendant's driver's license was suspended. Officer Rodriguez detained defendant inside the police car and asked him about the accident. Defendant was hesitant to speak, but he did state that he had been traveling westbound on 79th Street.

¶ 14        Inside the police car, Officer Rodriguez smelled the odor of alcohol on defendant's breath and noticed his speech was slurred. Based on his training and experience with the Chicago police department, Officer Rodriguez opined that defendant was under the influence of alcohol.

¶ 15        Officer Barber testified that shortly after 4 p.m. on March 19, 2010, he went to the scene of a traffic accident at 79th Street and Kedzie Avenue. Officer Barber saw a green Volvo facing east in the westbound lane and a Chrysler wrapped around a light pole. Officer Barber learned that defendant was the driver of the Volvo.

¶ 16        Officer Barber spoke with defendant at the scene and observed that defendant's breath smelled like an "alcoholic beverage," his eyes were bloodshot, and his speech was a little

slurred. Officer Barber learned from Officer Rodriguez that defendant's license was suspended, and he took defendant to the police station, where he administered three field sobriety tests. Defendant failed all three tests. Officer Barber formed the opinion that defendant was under the influence of alcohol.

¶ 17    Officer Barber gave defendant a Breathalyzer test. Officer Barber previously had been trained to administer the Breathalyzer test, he was certified as a "breath operator" and was recertified every 3 years for the past 15 years. When asked whether he knew how the Breathalyzer machine works, Officer Barber explained he knew how to administer the test and that he prepared the machine by hitting "enter" and inputting the test taker's name, date of birth, driver's license number and ticket number along with the officer's name, county, and badge number. Officer Barber testified the machine then self-calibrates and reads 0.000 to indicate it is calibrated and working properly at the time of the test.

¶ 18    Officer Barber testified the Breathalyzer machine was regularly tested for accuracy by the Illinois State Police and had been tested on March 1, 2010 (prior to defendant's test), and April 1, 2010 (after defendant's test). Officer Barber did not testify to the results of those accuracy tests.

¶ 19    Officer Barber gave defendant the Breathalyzer test on March 19, 2010, approximately two hours after the car accident. Prior to testing him, Officer Barber observed defendant for 20 minutes to ensure he had not eaten or drunk anything which would taint the test. After observing defendant for the requisite 20 minutes, Officer Barber prepared the Breathalyzer machine by inputting the relevant information, after which the machine self-calibrated and read 0.000. Officer Barber gave defendant a tube attached to the Breathalyzer machine and told him to blow into it for four or five seconds. Defendant did so, after which the Breathalyzer machine showed a result on the screen and printed out a "breath ticket" which revealed defendant's blood alcohol concentration was 0.099, which was over the legal limit of 0.08. The trial court admitted the breath ticket into evidence.

¶ 20    On cross-examination, Officer Barber testified he does not know how the Breathalyzer machine works and does not test it for accuracy but that he is trained to administer tests using the machine. Officer Barber explained that, at one time, officers from the Illinois State Police came to the police station personally to test the Breathalyzer machine for accuracy, the results of which were written in log books, but that the Illinois State Police no longer personally tests the machine. Instead, the machine is tested electronically on the first day of every month. Officer Barber is not present when the Illinois State Police tests the Breathalyzer machine on the first of the month.

¶ 21    The State rested and the court admitted the electronic certification of the Breathalyzer machine over defendant's objection.

¶ 22    Defendant testified that in the afternoon on March 19, 2010, he was driving westbound in his Volvo on 79th Street to pick up his mother at Midway Airport when he was sideswiped by another vehicle, a Chrysler, just before Kedzie Avenue. As a result of the collision, defendant slammed into the center median and the other vehicle hit a light pole. Paramedics arrived and asked defendant if he wanted to go to the hospital. Defendant declined.

¶ 23    Defendant was taken to the police station, where Officer Barber told him to take a Breathalyzer test by blowing into the Breathalyzer machine. Defendant blew into the Breathalyzer machine twice, but it did not "beep" to indicate that it registered a result. Officer Barber never showed defendant a receipt indicating a result.

¶ 24        The jury convicted defendant of driving on a suspended license and driving with an alcohol concentration of 0.08 or more. The jury acquitted defendant of driving under the influence of alcohol. On the conviction of driving on a suspended license, the trial court sentenced defendant to 24 months' conditional discharge. On the conviction of driving with an alcohol concentration of 0.08 or more, the trial court sentenced defendant to a concurrent term of 24 months' conditional discharge, as well as 360 hours of community service, a 30-hour alcohol treatment program, a victim impact panel, and $200 in fines. Defendant appeals his conviction of driving with an alcohol concentration of 0.08 or more; he makes no argument on appeal regarding his conviction of driving on a suspended license.

¶ 25                              III. ANALYSIS

¶ 26        First, defendant contends the trial court improperly admitted his Breathalyzer test result, without which the evidence was insufficient to sustain the verdict against him.

¶ 27        In reviewing the sufficiency of the evidence, the relevant inquiry is whether, after viewing the evidence in the light most favorable to the prosecution, any rational trier of fact could have found the essential elements of the crime beyond a reasonable doubt. *People v. Givens*, 364 Ill. App. 3d 37, 43 (2005). It is the province of the trier of fact to assess the credibility of the witnesses, determine the weight to be given their testimony, resolve conflicts in the evidence, and draw reasonable inferences from the evidence. *Id.*

¶ 28        To prove defendant guilty of driving with an alcohol concentration of 0.08 or more, the State must prove: (1) he drove or was in actual physical control of any vehicle in Illinois; and (2) the alcohol concentration in his blood was 0.08 or more. 625 ILCS 5/11-501(a)(1) (West 2010).

¶ 29        On appeal, defendant does not argue that the State failed to establish that he was driving or in actual physical control of a vehicle. Rather, defendant's argument is that: the State failed to lay an adequate foundation for admission of the Breathalyzer test result (showing he had an alcohol concentration of 0.099); the Breathalyzer test result, therefore, should not have been admitted; and his conviction should be reversed because without the Breathalyzer test result, there was no evidence that the alcohol concentration in his blood was 0.08 or more.

¶ 30        For admission of a Breathalyzer test result, the State must show: (1) the Breathalyzer test was performed according to the uniform standard adopted by the Department of State Police[1]; (2) the operator administering the test was certified by the Department of State Police; (3) the machine used was a model approved by the Department of State Police, was tested regularly for accuracy, and was working properly; (4) the motorist was observed the requisite 20 minutes before the test and, during this period, he did not smoke, vomit, or drink; and (5) the result appearing on the printout sheet can be identified as the test given to the motorist. *People v. Orth*, 124 Ill. 2d 326, 340 (1988).

¶ 31        At issue here is the third *Orth* factor, the accuracy requirement. To satisfy this requirement, the State must establish that the Breathalyzer test was performed in accordance with section 11-501.2(a) of the Illinois Vehicle Code (625 ILCS 5/11-501.2(a) (West 2010)) and the

_____

[1]Pursuant to Public Act 91-828 (Pub. Act 91-828, § 5 (eff. Jan. 1, 2001)), reference to the "Department of Public Health" was replaced by the "Department of State Police." See 625 ILCS 5/11-501.2(a) (West 2010).

regulations promulgated by the Illinois Department of State Police. *People v. Clairmont*, 2011 IL App (2d) 100924, ¶ 12.

¶ 32    In pertinent part, section 11-501.2(a) authorizes admission of the chemical analysis of a person's breath in the prosecution of the offense of driving with an alcohol concentration of 0.08 or more. 625 ILCS 5/11-501.2(a) (West 2010). Section 11-501.2(a)(1) provides that "to be considered valid" the Breathalyzer test must be performed "according to standards promulgated by the Department of State Police." 625 ILCS 5/11-501.2(a)(1) (West 2010). Section 11-501.2(a)(1) further provides: "The Director of State Police is authorized to *** certify the accuracy of breath testing equipment. The Department of State Police shall prescribe regulations as necessary to implement this Section." *Id*. Section 11-501.2 is "intended to ensure reliability of evidence introduced in prosecutions for driving under the influence." *People v. Emrich*, 113 Ill. 2d 343, 349 (1986).

¶ 33    Pursuant to section 11-502.1(a)(1), the Department of State Police promulgated regulations contained in sections 1286.200 and 1286.230 of Title 20 of the Illinois Administrative Code. See 20 Ill. Adm. Code 1286.200 (2009); 20 Ill. Adm. Code 1286.230 (2011). Under section 1286.200, a rebuttable presumption that the Breathalyzer machine was accurate arises if the following four conditions are met: (1) the Breathalyzer machine was approved pursuant to section 1286.210 of the regulations (20 Ill. Adm. Code 1286.210 (2011) (not pertinent here)); (2) an accuracy check was conducted prior to defendant's test that was within the "accuracy tolerance" described in section 1286.230 of the regulations; (3) no accuracy check was performed after defendant's test or an accuracy check was performed after defendant's test and it was within the accuracy tolerance; and (4) defendant's test was conducted not more than 62 days after the last accuracy check. 20 Ill. Adm. Code 1286.200 (2009).

¶ 34    Section 1286.230 of the regulations provides in pertinent part:

> "To ensure the continued accuracy of approved evidentiary instruments, a BAT or automated system shall perform accuracy checks.
>
>    a) Checks shall be performed at least once every 62 days.
>
>    b) Checks shall consist of at least two tests of the instrument in which the instrument quantitates a reference sample.
>
>    c) Approved evidentiary instruments must quantitate a reference sample within 10 percent of the reference sample's value, as adjusted for environmental factors.
>
>    d) The accuracy check results shall be recorded in the instrument's logbook or internal memory, or in the central repository. The automatic accuracy checks or accuracy checks performed remotely will not be entered in the logbook. If the accuracy check was performed by a BAT at the instrument location, the accuracy check results shall be recorded in the instrument's logbook." 20 Ill. Adm. Code 1286.230 (2011).

"Thus, the plain and ordinary language of section 1286.230 indicates that a [Breathalyzer] machine must be checked at least once every 62 days or it will not be considered accurate." *Clairmont*, 2011 IL App (2d) 100924, ¶ 19.

¶ 35    In discussing the third *Orth* factor, this court has held that to meet the foundational requirement that the Breathalyzer machine was tested for accuracy and met the accuracy tolerance described in the regulations, the State need not present evidence at trial showing the actual accuracy test results; rather, the State needs only to show that the Breathalyzer machine

was inspected and certified as accurate within the time prescribed in the regulations and that the machine does not exhibit any malfunction at the time of defendant's test. See *People v. Caruso*, 201 Ill. App. 3d 930, 941 (1990); *People v. Kilpatrick*, 216 Ill. App. 3d 875, 881 (1991). Failure to comply with the regulations renders the result of the Breathalyzer test unreliable and, thus, inadmissible. *Clairmont*, 2011 IL App (2d) 100924, ¶ 12.[2]

¶ 36    Defendant here argues that the State failed to meet the foundational requirement of showing that the Breathalyzer machine was certified as accurate within the required time frame, specifically, within 62 days prior to defendant's test.

¶ 37    The parties dispute the standard of review. Defendant argues that the question of whether the State met the foundational requirement set forth in the regulations for admission of the Breathalyzer result is an issue of law for which *de novo* review is required. In support, defendant cites *People v. Simpson*, 2015 IL App (1st) 130303, ¶ 35, and *People v. Negron*, 2012 IL App (1st) 101194, ¶ 34, which held that the determination as to whether foundational requirements were met for the admission of expert testimony is a question of law reviewed *de novo*. Defendant also cites *People v. Cady*, 311 Ill. App. 3d 348, 350 (2000), which applied *de novo* review to determine whether the State proved that the Breathalyzer machine used to test defendant's breath was certified as accurate, and *People v. Eagletail*, 2014 IL App (1st) 130252, ¶ 19, which applied *de novo* review to determine whether the State satisfied the foundational requirements for admitting evidence of the results of defendant's breath test.

¶ 38    The State counters that the proper standard of review is for an abuse of discretion and cites in support *People v. Taylor*, 2011 IL 110067, in which our supreme court reviewed the trial court's decision to admit a VHS tape for an abuse of discretion, noting that reviewing courts should defer to the trial court's evidentiary rulings even if they involve legal issues unless the trial court's exercise of its discretion was frustrated by an erroneous rule of law. *Id.* ¶¶ 26-27. But see *People v. Crowe*, 327 Ill. App. 3d 930, 936 (2002) (noting our supreme court's holding with regard to deferring to the trial court's evidentiary rulings even if they involve legal issues, but finding that *de novo* review is appropriate when no fact or credibility issues are involved in the evidentiary ruling).

¶ 39    We need not resolve the issue of the proper standard of review in the present case, as our holding would be the same under either standard. We turn to the merits of defendant's argument that the State failed to meet the foundational requirement of showing that the Breathalyzer machine was certified as accurate within the requisite 62-day time frame.

¶ 40    In support of his argument, defendant notes that although the electronic certification admitted into evidence states that accuracy tests were conducted by the Illinois State Police on defendant's Breathalyzer machine on March 1, 2010, and April 1, 2010 (within 62 days prior to and after defendant's test), it merely lists the numerical results of the accuracy tests without providing any interpretation of those results. The electronic certification does not state that the Breathalyzer machine passed the accuracy tests, performed within the accuracy tolerance, and was, in fact, accurate. The State provided no evidence at trial, and makes no argument on appeal, regarding the meaning of the numbers in the electronic certification.

---

[2]The results of a Breathalyzer test may be admitted if the State establishes substantial compliance with the regulations. *People v. Olson*, 2013 IL App (2d) 121308, ¶ 15. Substantial compliance is found where the deviation from the regulations neither affects the reliability of the Breathalyzer test nor prejudices defendant. *Id*. The State makes no substantial compliance argument here.

¶ 41    Defendant further notes that Officer Barber, who administered the Breathalyzer test to defendant on March 19, 2010, testified he does not know how the Breathalyzer machine works, he was not present when the Illinois State Police tested it for accuracy on March 1, 2010 and April 1, 2010, and he does not know how the accuracy tests were conducted. No other witness testified to the accuracy of the Breathalyzer test results.

¶ 42    Defendant contends that on this record, the State failed to establish the foundational requirement that his Breathalyzer machine was certified as accurate at least once within 62 days prior to his test.

¶ 43    We agree with defendant. The electronic certification admitted into evidence contains raw data from the accuracy tests conducted electronically by the Illinois State Police on March 1, 2010, and April 1, 2010, but it provides no interpretation of that data, without which we are unable to discern whether the Breathalyzer machine performed within the accuracy tolerance and was certified as accurate for those dates. The Illinois State Police who conducted the accuracy testing electronically, and who could have testified as to whether the Breathalyzer machine was certified as accurate on those dates, were not called to testify at trial. The Keeper of Records who provided the electronic certification to the trial court was not called to testify. Nor was any other evidence or testimony admitted regarding whether the Breathalyzer machine was certified as accurate on March 1, 2010, and April 1, 2010. Instead, the State called Officer Barber, who was not a member of the Illinois State Police and who was not involved with the officers' testing of the Breathalyzer machine. Officer Barber testified the Breathalyzer machine was working properly on the date he administered defendant's test (March 19, 2010), as evidenced by the 0.000 reading it gave after self-calibrating, but he *never* testified to the results of the accuracy tests conducted electronically by the Illinois State Police on March 1, 2010, and April 1, 2010. As discussed earlier in this opinion, a proper foundation for the admissibility of Breathalyzer test results requires a showing that the Breathalyzer machine was functioning properly on the date of the test *and* that it was certified for accuracy within the time prescribed in the regulations (*Caruso*, 201 Ill. App. 3d at 941); the regulations currently require that the Breathalyzer machine be tested for accuracy not more than 62 days prior to the test. Officer Barber's testimony addressed only one of the foundational elements, the functioning of the Breathalyzer machine on the date of defendant's test, but did not address the remaining foundational element, the accuracy certification within 62 days prior to the test.

¶ 44    In the absence of any evidence that defendant's Breathalyzer machine was certified as accurate within 62 days prior to defendant's test, as required by the applicable regulations, the State failed to establish a proper foundation for the admission of the Breathalyzer test result and the trial court erred by admitting it into evidence.

¶ 45    Having determined that the trial court erred in admitting the Breathalyzer test result into evidence, we next turn to the appropriate remedy. Defendant requests outright reversal because the evidence is insufficient to sustain his conviction without the Breathalyzer test result. The State counters that its failure to provide an adequate evidentiary foundation for the admission of the Breathalyzer test result amounts to a "trial error" rather than one involving insufficient evidence, and that the appropriate remedy is to remand for a new trial.

¶ 46    The prospect of retrial raises double jeopardy concerns and requires us to assess the sufficiency of the evidence against defendant. *People v. Harris*, 2015 IL App (1st) 132162, ¶ 45. For purposes of double jeopardy, our supreme court has distinguished between judgments reversing convictions on account of "trial error" and judgments reversing

convictions on account of evidentiary insufficiency. *People v. Olivera*, 164 Ill. 2d 382, 393 (1995). Our supreme court has held that "[a]lthough the double jeopardy clause precludes the State from retrying a defendant after a reviewing court has determined that the evidence introduced at trial was legally insufficient to convict, the double jeopardy clause does not preclude retrial of a defendant whose conviction has been set aside because of an error in the proceedings leading to the conviction. [Citation.]" *Id.* "If the evidence presented at the first trial, *including the improperly admitted evidence*, would have been sufficient for any rational trier of fact to find the essential elements of the crime proven beyond a reasonable doubt, retrial is the proper remedy." (Emphasis added.) *People v. McKown*, 236 Ill. 2d 278, 311 (2010).

¶ 47 In the present case, we are setting aside defendant's conviction because of a trial error in the proceedings leading to the conviction, specifically, because the State failed to establish a proper foundation for the admission of the Breathalyzer test result and the trial court erred by admitting it into evidence. Accordingly, in determining the appropriate remedy, we consider whether all the evidence presented at trial, including the Breathalyzer result, was sufficient to convict. *Olivera*, 164 Ill. 2d at 393; *People v. Lopez*, 229 Ill. 2d 322, 367 (2008). The relevant question is whether, after viewing all the evidence (including the Breathalyzer result) in the light most favorable to the State, any rational trier of fact could have found the essential elements of the crime of driving with an alcohol concentration of 0.08 or more beyond a reasonable doubt. *Lopez*, 229 Ill. 2d at 367. If the answer is yes, then there are no double jeopardy concerns, and the proper remedy is to remand for a new trial. *Id.* at 368.

¶ 48 As discussed earlier in this opinion, to prove defendant guilty of driving with an alcohol concentration of 0.08 or more, the State must prove: (1) he drove or was in actual physical control of any vehicle in Illinois; and (2) the alcohol concentration in his blood was 0.08 or more. 625 ILCS 5/11-501(a)(1) (West 2010). Defendant does not dispute that he was driving or in actual physical control of a vehicle that was involved in an accident on the date in question, March 19, 2010. The issue is whether his alcohol concentration was 0.08 or more. Officer Barber testified he administered a Breathalyzer test to defendant two hours after the accident on March 19, 2010. The trial court admitted into evidence the breath ticket printed out by the Breathalyzer machine, which revealed the test result. The breath ticket details the date and time the test was taken, Officer Barber's name and badge number, defendant's full name, his date of birth, the ticket number, and the result of the Breathalyzer test as 0.099. Officer Barber testified that defendant's Breathalyzer test result of 0.099 was above the legal limit of 0.08. Viewed in the light most favorable to the State, the evidence at trial was sufficient for any rational trier of fact to find that defendant was guilty of driving with an alcohol concentration of 0.08 or more. Accordingly, there is no double jeopardy impediment to retrial and, thus, we remand the cause to the circuit court for that purpose.

¶ 49 Defendant argues though, that *People v. Raney*, 324 Ill. App. 3d 703 (2001) compels us to reverse his conviction outright, without remand. In *Raney*, the defendant there, Dan Raney, was convicted of possession of a controlled substance with intent to deliver (1.349 grams cocaine) and sentenced to eight years in prison. *Id.* at 704. On appeal, the defendant argued that the State failed to prove him guilty beyond a reasonable doubt because the State failed to establish a proper foundation for the admission of the expert's testimony that the scientific results from the gas chromatography mass spectrometer (GCMS) machine indicated that the substance in question was cocaine. *Id.* at 704-05.

¶ 50    The appellate court agreed that the State failed to establish the necessary foundation proof for admitting the expert opinion regarding the GCMS results. *Id*. at 710. The appellate court concluded: "the State failed to prove defendant guilty beyond a reasonable doubt of possession of a controlled substance with intent to deliver based on the lack of proper foundation for [the expert's] opinion that the substance in the 14 packets contained cocaine." *Id*. at 711. With no further discussion, the appellate court then reversed outright, without remanding. *Id*.

¶ 51    Defendant contends that, pursuant to *Raney*, we should find that the State failed to prove him guilty beyond a reasonable doubt of driving with an alcohol concentration of 0.08 or more, based on the lack of proper foundation for the admission of the Breathalyzer test result, and reverse his conviction outright without remand. However, *Raney* runs counter to our supreme court precedent holding: (1) the improper admission of evidence does not automatically require outright reversal, even where the evidence is insufficient to sustain a verdict once the erroneously admitted evidence has been discounted; and (2) remand is appropriate where all the evidence at trial, including the improperly admitted evidence, when viewed in the light most favorable to the State, is such that any rational trier of fact could have found defendant guilty beyond a reasonable doubt, thereby obviating any double jeopardy concerns. See *Lopez*, 229 Ill. 2d at 367-68; *Olivera*, 164 Ill. 2d at 393-97.

¶ 52    We are obliged to follow the precedents of our supreme court. *People v. Goebel*, 284 Ill. App. 3d 618, 624 (1996). Accordingly, pursuant to *Lopez* and *Olivera*, we reverse defendant's conviction of driving with an alcohol concentration of 0.08 or more and remand for a new trial.

¶ 53    Defendant also contends that *People v. Bush*, 214 Ill. 2d 318 (2005), and *People v. Hagberg*, 192 Ill. 2d 29 (2000), compel us to reverse his conviction outright, without remand. In *Bush*, the defendant there, Joyce Bush, was convicted of two counts of possession of a controlled substance with the intent to deliver. *Bush*, 214 Ill. 2d at 320. At trial, the parties stipulated that the expert in forensic chemistry would testify he tested the item recovered and determined it was cocaine in the amount of less than 0.1 gram. *Id*. at 321-22. On appeal to the supreme court, Bush argued that the State failed to prove beyond a reasonable doubt that the substance was in fact cocaine, as the expert's opinion on that point lacked adequate foundation. *Id*. at 322. The defendant cited *Raney* in support. *Id*. at 330. Our supreme court found that the defendant's reliance on *Raney* was misplaced, because in *Raney* the defendant there repeatedly argued before the trial court that the expert's opinion lacked an adequate foundation (*id*. at 335), whereas in the case before it, the defendant stipulated that the expert's opinion was admissible. *Id*. at 333. Our supreme court held that by failing to object at trial and, instead, stipulating to the admissibility of the expert's opinion, the defendant waived the argument that the expert's opinion lacked an adequate foundation. *Id*. at 335-37. Our supreme court's opinion in *Bush* did not address the issue here, whether outright reversal is required when evidence is erroneously admitted over the defense objection, and when the remaining, properly admitted evidence is insufficient to prove a defendant's guilt. Importantly, *Bush* did not overrule the earlier supreme court precedent holding that in the case of improperly admitted evidence, the reviewing court should consider whether any rational trier of fact could find defendant guilty beyond a reasonable doubt after viewing all the evidence, *including the improperly admitted evidence*, in the light most favorable to the State. *Olivera*, 164 Ill. 2d at 393-97. When any rational trier of fact could so find, the case should be remanded for a new trial. *Id*. at 396. Supreme court cases subsequent to *Bush* continue to follow this mode of analysis when

determining whether to remand for a new trial where evidence was improperly admitted. See *Lopez*, 229 Ill. 2d at 367-68; *McKown*, 236 Ill. 2d at 311.

¶ 54 In *Hagberg*, the defendant, Patrick Hagberg, was convicted of the unlawful possession of a controlled substance. *Hagberg*, 192 Ill. 2d at 30. On appeal, our supreme court held that the evidence at the defendant's trial was vague and speculative with regard to the identity of the recovered substance and, thus, was insufficient to prove him guilty of unlawful possession of a controlled substance. *Id.* at 34. Our supreme court affirmed the appellate court's outright reversal of the defendant's conviction without remand. *Id.* at 35. However, our supreme court did not hold that any of the evidence was improperly admitted and, thus, *Hagberg* did not involve the kind of trial error at issue here for which remand is the appropriate remedy.

¶ 55                                     IV. CONCLUSION

¶ 56 For the foregoing reasons, we reverse defendant's conviction of driving with an alcohol concentration of 0.08 or more and remand for a new trial. As a result of our disposition of this case, we need not address the other arguments on appeal, including whether or not the electronic certification was admissible as a self-authenticating business record.

¶ 57 Reversed and remanded.