**NOTICE:** This order was filed under Supreme Court Rule 23 and is not precedent except in the limited circumstances allowed under Rule 23(e)(1).

2022 IL App (3d) 210519-U

Order filed November 29, 2022

_____

IN THE

APPELLATE COURT OF ILLINOIS

THIRD DISTRICT

2022

| | | |
|---|---|---|
| THE PEOPLE OF THE STATE OF ILLINOIS, | ) | Appeal from the Circuit Court |
| | ) | of the 13th Judicial Circuit, |
| Plaintiff-Appellant, | ) | Grundy County, Illinois, |
| | ) | |
| v. | ) | Appeal No. 3-21-0519 |
| | ) | Circuit No. 21-DT-181 |
| | ) | |
| KELLY J. PETERSON, | ) | Honorable |
| | ) | Scott M. Belt, |
| Defendant-Appellee. | ) | Judge, Presiding. |

_____

JUSTICE HOLDRIDGE delivered the judgment of the court.
Justices Daugherity and Hettel concurred in the judgment.

_____

**ORDER**

¶ 1     *Held*:  The court did not err when it granted the defendant's petition to rescind statutory summary suspension.

¶ 2     The defendant, Kelly J. Peterson, was arrested for driving under the influence of alcohol (DUI) (625 ILCS 5/11-501(a)(1), (2) (West 2020)), and her driver's license was summarily suspended pursuant to the implied-consent statute (625 ILCS 5/11-501.1 (West 2020)). Peterson filed a petition to rescind the suspension, which the circuit court granted. The State appeals.

¶ 3                                    I. BACKGROUND

¶ 4          In July 2021, Peterson was arrested for DUI (625 ILCS 5/11-501(a)(1), (2) (West 2020))

and was later issued a notice of statutory summary suspension for voluntarily submitting to a

chemical test that indicated a blood-alcohol concentration (BAC) of 0.08 or more, which resulted

in a six-month suspension of her driving privileges. She filed a petition to rescind statutory

summary suspension (625 ILCS 5/2-118.1(b) (West 2020)), arguing she was not properly warned

by the arresting officer as provided in section 11-501.1(c) of the Illinois Vehicle Code (Code) (625

ILCS 5/11-501.1(c) (West 2020)). The following evidence was presented at the hearing.

¶ 5          Peterson testified that, following her arrest, she was brought to the Morris Police

Department.[1] She recalled that Officer Ryan Ties read her the Warning to Motorist. Peterson

testified that Officer Ties provided that a lot of the items in the Warning to Motorist did not apply

to her, such as the items pertaining to school bus drivers and drugs. She testified that, around 20

minutes after being read the Warning to Motorist, Officer Ties directed her over to the Breathalyzer

machine.[2] She stated that she intended to refuse to provide a breath sample and that she approached

upon his request because she was cooperating with the police. Peterson testified that she told

Officer Ties that she did not want to submit to the test, and he told her that it was implied consent

that she would submit to all chemical testing. She testified that she looked at the other officer in

the room who held up a piece of paper and said that she already signed it. Peterson felt like she

_____

        [1] The police report provides there were reasonable grounds to believe that Peterson was driving
under the influence due to improper lane usage, glossy eyes, odor of an alcoholic beverage, admitting to
consuming alcohol, and a portable (preliminary) breath test of 0.121 BAC.
        [2] For a Breathalyzer test result to be admissible in court, the State must show "(1)
the Breathalyzer test was performed according to the uniform standard adopted by the Department of State
Police; (2) the operator administering the test was certified by the Department of State Police; (3) the
machine used was a model approved by the Department of State Police, was tested regularly for accuracy,
and was working properly; (4) the motorist was observed the requisite 20 minutes before the test and,
during this period, he did not smoke, vomit, or drink; and (5) the result appearing on the printout sheet can
be identified as the test given to the motorist." *People v. Smith*, 2015 IL App (1st) 122306, ¶ 30.

                                                2

had to submit to the breathalyzer test, so she did.

¶ 6    The State moved for a directed finding, arguing that Peterson failed to provide sufficient proof that she submitted to the test involuntarily. The court reserved the motion.

¶ 7    Officer Ties testified that he had been a patrol officer with the Morris Police Department for about two and a half years. He recalled his encounter with Peterson and identified her in court. Officer Ties testified that he read Peterson the Warning to Motorist verbatim and Peterson asked him questions, such as, what the warning meant to her specifically. He testified that he told her that if (1) she submitted to a breath sample over the legal limit, which is a BAC of 0.08, her driver's license would be suspended for a minimum of six months; (2) she refused to submit to the test, her driver's license would be suspended for a minimum of one year; and (3) she submitted a breath sample that was under the legal limit her driver's license would not be suspended. Officer Ties stated that Peterson signed the Warning to Motorist, and he waited 20 minutes for the test.

¶ 8    Officer Ties testified that he then told Peterson that he needed her to provide the breath sample. He recalled that Peterson stated this was what got her into trouble earlier (when she submitted to the portable breath test resulting in her arrest). Officer testified stated that she seemed hesitant, but he did not "recall her refusing totally." He stated that he told Peterson it was implied consent when she signed for her driver's license that she would submit to a breath sample. Officer Ties testified that she did not refuse or ask any questions. He recalled that another officer was in the room and held up a piece of paper explaining that she had signed the Warning to Motorist.

¶ 9    Peterson argued that she was misinformed as she was given an inaccurate warning. She stated that Officer Ties said this is an implied-consent state, so she had to submit to the test. When she looked to the other officer, seemingly to see whether this was true or not, he held up the Warning to Motorist, pointed to it, and said that she already signed it saying she would submit to

3

testing. At that point, she felt that she had to submit a breath sample regardless of what was said 20 minutes prior. The State argued that Peterson was not misinformed and that the videotape did not show that she refused testing. The court took the matter under advisement.

¶ 10     The video of record shows that Officer Ties read the Warning to Motorist to Peterson. Following the waiting period, Officer Ties prepared the Breathalyzer and stated "Okay, Kelly. I need you to come over here and stand on my right please." She approached and he stated, "Okay, basically like just like we did back on stand, I just need you to take a deep breath and blow out okay?" Peterson replied, "but like this is what got me in trouble the first time *** my blowing." Officer Ties said, "Okay, well from what I'm seeing, that this one right here, this isn't—when you signed up for your driver's license, this one's an implied consent that you will blow and *** agree to all chemical testing[]." The other officer in the room then held up a piece of paper and said, "It is also this long thing that he read to you." Peterson sighed and turned back to Officer Ties, who instructed her on how the machine worked. Peterson then provided a breath sample. Officer Ties stated that her BAC was 0.115 and Peterson responded, "I'm so in trouble, so how long is my license taken away now?" Officer Ties explained that since she submitted to the test it is a minimum of six months but if she had not submitted, it would have been a minimum of 12 months.

¶ 11     The court issued an order granting Peterson's petition to rescind statutory summary suspension. The court provided that the video evidence reflected that Officer Ties read the Warning to Motorist to Peterson during the 20-minute waiting period. What was in dispute was the additional information provided to Peterson immediately before she submitted to the Breathalyzer. The court made the following findings: (1) a police officer's demand that the driver submit to testing must be sufficiently clear; (2) Peterson was not given an option to provide a sample or refuse; (3) when Peterson expressed concern that a breath test was what got her into trouble before,

4

Officer Ties provided that implied consent requires a motorist to submit a breath sample and agree to all chemical testing, which was a misstatement of the law; (4) Peterson credibly testified that she felt she was required to provide a breath sample; (5) Peterson's signature on the Warning to Motorist was simply an acknowledgement of receipt and did not create an affirmative obligation to provide a sample nor did it revoke her ability to refuse testing; (6) Officer Ties's attempt to further explain implied consent in a manner that was legally inaccurate convinced Peterson that she had no choice but to submit to a breath analysis; (7) an officer who strays from the express language of the Warning to Motorist does so at their own peril, especially if that information is legally inaccurate; (8) Peterson did not understand the Warning to Motorist as a result of the supplemental and voluntary misinformation; and (9) principles of fairness denied this to stand. The State filed a motion to reconsider, which the court denied. The State appeals.

¶ 12                                II. ANALYSIS

¶ 13        On appeal, the State argues that the totality of the circumstances provides that Peterson was accurately warned, and law enforcement was not required to explicitly ask her whether she consented to testing. We note Peterson did not file an appellee's brief. However, we will proceed with the appeal as we find that "the record is simple and the issues can be easily decided without the aid of the appellee's brief." *Thomas v. Koe*, 395 Ill. App. 3d 570, 577 (2009).

¶ 14        The implied-consent statute in the Code provides:

> "Any person who drives or is in actual physical control of a motor vehicle upon the public highways of this State shall be deemed to have given consent *** to a chemical test or tests of blood, breath, other bodily substance, or urine for the purpose of determining the content of alcohol, other drug or drugs, or intoxicating

5

compound or compounds or any combination thereof in the person's blood if arrested *** [for a DUI offense] ***." 625 ILCS 5/11-501.1(a) (West 2020).

If the motorist refuses or fails to complete such tests requested by a law enforcement officer possessing probable cause and after receipt of appropriate warnings and documentation, the motorist's driver's license shall be summarily suspended. 625 ILCS 5/11-501.1(c) (West 2020). However, the motorist may seek recission of the summary suspension on four enumerated bases provided by statute. See 625 ILCS 5/2-118.1(b)(1)-(4) (West 2020).

¶ 15    A petition to rescind is a civil matter where the defendant has the burden of proof to establish a *prima facie* case for recission. *People v. Ehley*, 381 Ill. App. 3d 937, 943 (2008). Once the defendant has done so, the State then has the burden of presenting evidence to justify the suspension. *People v. Garcia-Gutierrez*, 2019 IL App (3d) 180283, ¶ 19. In rescission cases, we review the circuit court's factual findings under the manifest weight of the evidence standard, while the court's ultimate legal ruling regarding rescission is reviewed *de novo*. *People v. Relwani*, 2019 IL 123385, ¶ 18. A finding is against the manifest weight of the evidence only where the opposite conclusion is clearly apparent or the finding itself is unreasonable, arbitrary, or not based on the evidence. *People v. Sanchez*, 2021 IL App (3d) 170410, ¶ 25.

¶ 16    In the case before us, Peterson sought rescission on the basis that she was not properly warned by the arresting officer as provided in section 11-501.1 of the Code (625 ILCS 5/11-501.1 (West 2020)). Essentially, she argued that any proper warning by Officer Ties when he read her the Warning to Motorist was undone by his later explanation that, because she signed up for a driver's license in Illinois, an implied-consent state, she agreed to submit to all chemical tests.

¶ 17    Our supreme court has found that the statute only requires that warnings be given and that it does not require that the motorist understand or comprehend them. *People v. Wegielnik*, 152 Ill.

6

2d 418, 427 (1992). In fact, the warnings are not meant to enable an "informed choice," but rather, serve as an evidence-gathering tool for the State. *People v. Johnson*, 197 Ill. 2d 478, 487 (2001). "The threat of an extended suspension for motorists who refuse the test motivates individuals to take the test so that the State may gain objective evidence of intoxication." *Id.* However, although motorists need not understand the warning and the consequences thereof, law enforcement officers cannot misinform motorists who may understand the inaccurate warnings and rely upon them. *Id.* at 488. This would allow law enforcement officers to freely deceive motorists with misinformation, which must be rejected based on principles of fairness. *Id.*

¶ 18    Here, Peterson was properly warned when Officer Ties read her the Warning to Motorist form. However, 20 minutes later, when Officer Ties called her over to submit the breath sample and gave her instructions, Peterson expressed hesitation. Peterson told Officer Ties that giving the preliminary breath sample is what got her in this trouble. Officer Ties incorrectly explained that, as a holder of a driver's license in an implied-consent state, she agreed to submit to all chemical tests. This interaction supports Peterson's testimony that she wanted to refuse the test, but Officer Ties gave her information providing that she could not refuse. The other officer in the room attempted to correct Officer Ties's misstatement of law by providing that it was "also" in the Warning to Motorist that was read to her. This added to the confusion because it did not specifically correct the misstatement of law provided by Officer Ties.

¶ 19    Considering the totality of the circumstances, the latter warning Peterson received was legally incorrect, confusing, and misleading and rendered the former warning inadequate. See *Garcia-Gutierrez*, 2019 IL App (3d) 180283, ¶ 27 (the record contained no evidence that the warnings given to the motorist were improper, confusing, or inadequate). We note that there was testimony before the circuit court that the officers suggested that Peterson had to submit to testing

because she *signed* the Warning to Motorist. However, we find no such evidence of record. During the interaction at issue, neither officer mentioned that she signed the Warning to Motorist or pointed to her signature. Regardless, as explained by the circuit court, the motorist's signature on the Warning to Motorist is merely an acknowledge of receipt. The Warning to Motorist provides a line for the motorist's signature and states "I (motorist) acknowledge receipt of this warning to motorist." Finally, the State raises other issues, such as the fact that Peterson walked over to the Breathalyzer machine when Officer Ties called for her and Peterson expressed an understanding of the warnings when the Warning to Motorist was read to her. We find these facts irrelevant to our analysis because they occurred *before* the misstatement of law which was never corrected and ultimately caused the confusion and misinformation in this case.

¶ 20    Therefore, the circuit court did not err when it granted Peterson's petition to rescind statutory summary suspension.

¶ 21                              III. CONCLUSION

¶ 22    For these reasons, the judgment of the circuit court of Grundy County is affirmed.

¶ 23    Affirmed.